Rene L. Valladares
Federal Public Defender
Nevada State Bar No. 11479
Erin Gettel
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Erin_Gettel@fd.org

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Jess Elijio Carranza, Jimmy Carter Kim,

     Plaintiffs/Petitioners,

    v.

Brian Koehn, Warden, Nevada Southern
Detention Center,

     Defendant/Respondent.

Case No. 2:20-cv-01586-GMN-DJA

**Response to Motion to Dismiss
(ECF No. 12)**

On August 26, 2020, Petitioners filed a § 2241 petition and complaint for declaratory and injunctive relief, arguing that Respondent has acted and continues to act in deliberate indifference to their health and safety with respect to the COVID-19 pandemic.[1]  On August 17, 2020, Respondent answered the petition and also moved to dismiss it.[2]  Respondent seeks dismissal on the grounds that (1) Petitioners' claim is simply not cognizable in habeas and that they must proceed, if at all, under 42 U.S.C. § 1983, the Bail Reform Act, or the

---

[1] *See* ECF No. 1.

[2] ECF Nos. 12 and 13.  Documents 12 and 13 are identical but separately titled.  The first 20 pages is devoted to the factual background and Respondent's legal dismissal arguments, while the latter 20 pages is devoted to the factual response on the merits.

Prison Litigation Reform Act; (2) Petitioners failed to exhaust their administrative remedies; (3) Petitioners lack standing; and (4) the Federal Public Defender's Office has not been appointed to represent Petitioners in this action.[3]

First, both the Supreme Court and Ninth Circuit have left open whether federal detainees may challenge the conditions of their confinement under § 2241, and the Supreme Court's most recent guidance suggests that § 2241 is available to challenge the type of large-scale policy decisions here. Also, the other avenues for relief Respondent argues Petitioners must use instead are either not available to them (§ 1983), not a separate cause of action (the PLRA), or do not encompass the relief requested (the BRA). Second, the PLRA does not apply to § 2241 petitions and may be waived where exhausting administrative remedies would be futile. Third, that other detainees are subjected to the same unconstitutional conditions as Petitioners does not deprive them of standing, nor does their request for judicial fact-finding. Fourth, the FPD has been appointed to represent Petitioners in their criminal cases, which includes ancillary matters such as this action. Even if this were not an ancillary matter, Petitioners meet the criteria for appointment of counsel, and undersigned will separately move for appointment in this case.

---

[3] ECF No. 12 at 10–19.

2

**A.**     **This Court should deny Respondent's motion to dismiss on the ground that this action is not cognizable in habeas and that Petitioners must instead seek relief under § 1983, the BRA, or the PLRA.**

Respondent argues that Petitioners' claim is simply not cognizable in habeas and that they must proceed, if at all, under 42 U.S.C. § 1983, the BRA, or PLRA.[4]  Respondent relies on dicta from Supreme Court and Ninth Circuit decisions to argue, with little analysis, that Petitioners may not proceed in habeas.[5]  But this is far from settled.  The Supreme Court has repeatedly—and quite expressly—left open whether prisoners may challenge the conditions of their confinement through habeas.[6]  The Circuit Courts are split on this issue.[7]  For its part, the Ninth Circuit held in *Nettles v. Grounds* that state prisoners may not challenge prison conditions under 28 U.S.C. § 2254 but must do so, if at all, under § 1983.[8]  However, *Nettles* expressly left open the precise issue here: whether federal prisoners—whose habeas claims are governed by different statutory requirements and whose keepers act under color of federal rather than

---

[4] ECF No. 12 at 10–12, 14, 17–18.  These are subsections A,C, and E of Respondent's brief.  Because these argumets overlap and present similar questions of law, they are treated together here.

[5] ECF No. 12 at 10–12.

[6] *Ziglar v. Abassi*, 137 S.Ct. 1843, 1862 (2017); *Boumediene v. Bush*, 553 U.S. 723, 792 (2008).  *See Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement"); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal").

[7] *Poree v. Collins*, 866 F.3d 235, 243–44 (5th Cir. 2017).

[8] 830 F.3d 922 (9th Cir. 2016).

3

state law—may challenge the conditions of their confinement under § 2241.  In its 2017 decision in *Ziglar v. Abassi*, the Supreme Court strongly suggested that they can.[9]

Because Respondent relies on a handful of quotes from decisions discussing the interplay between § 1983 and habeas, a somewhat detailed discussion of these cases is necessary.  We then move to an in-depth discussion of *Nettles* and *Ziglar*, which contain the Ninth Circuit and Supreme Court's more recent comments on this issue.  This section concludes by explaining why Petitioners are not required—or even permitted—to proceed instead under § 1983, the BRA, or the PLRA.

### 1. The Supreme Court's decisions in *Preiser*, *Nelson*, and *Muhammad*

In *Preiser v. Rodriguez*, New York state prisoners filed § 1983 complaints to recoup unconstitutionally revoked good-time credits, which would expedite their release.[10]  The Supreme Court held that when a challenge falls within the "heart of habeas corpus," state prisoners may not proceed by way of a § 1983 action, as otherwise they could evade the procedural requirements established for state habeas challenges in the federal courts, namely, state-court exhaustion.[11]  Claims that fall within the "heart" or "core" of habeas corpus—those in which a prisoner "challeng[es] the very fact or duration of his physical imprisonment"— may only be brought in habeas.[12]

---

[9] *Ziglar,* 137 S.Ct. at 1862.

[10] *Preiser v. Rodriguez*, 411 U.S. 475, 482 (1973).

[11] *Id.* at 489–90.

[12] *Id.* at 500.

4

Significantly, the Court did not hold that the converse is also true—that is, that any claim challenging something apart from the fact or duration of confinement may not be raised in habeas.  To the contrary, the Court stated: "This is not to say that habeas corpus may not also be available to challenge . . . prison conditions."[13]  Four years later, in *Bell v. Wolfish*, the Supreme Court again left "to another day the question of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement itself."[14]

Respondent also quotes *Nelson v. Campbell* and *Muhammad v. Close*, but, like *Preiser*, both of those decisions also dealt with the appropriate limits of § 1983, not habeas.[15]

In *Nelson*, an Alabama death row prisoner filed a § 1983 action arguing that the state's proposed "cut-down" procedure to access his veins during lethal injection would violate the Eighth Amendment.  The federal district court dismissed the action on the ground that it was the functional equivalent of an unauthorized second or successive § 2254 habeas petition, which Nelson had not obtained authorization to file, and the Eleventh Circuit affirmed.[16]

Citing *Preiser*, the Court reiterated that state prisoners' claims falling "within the 'core' of habeas corpus" are not cognizable under § 1983.[17]  The Court then added the line Respondent quotes: "By contrast, constitutional claims that

---

[13] *Id.* at 499.

[14] 441 U.S. 520, 527 n.6 (1979).

[15] ECF No. 12 at 10.

[16] *Nelson*, 541 U.S. at 642.

[17] *Id.* at 643.

merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and *may* be brought [under] § 1983 in the first instance."[18]

The Court concluded that it need not reach the difficult question of how to categorize method-of-execution claims generally, i.e., whether they are "core" habeas claims that must be brought in habeas.[19]  This is because the cut-down procedure was not a statutorily mandated part of Alabama's lethal-injection protocol, and Nelson conceded there were acceptable alternatives for gaining venous access.  His claim would not necessarily invalidate his death sentence as it could still be carried out.[20]  Thus, his claim was cognizable under § 1983 in the first instance.  The Court noted that this was consistent with the approach it had taken in § 1983 damages actions in *Heck v. Humphrey*, where it held that plaintiffs could not bring claims that would necessarily undermine their convictions or sentences unless they first obtained favorable termination of those proceedings on direct appeal or through state or federal habeas.[21]  This is known as the favorable-termination requirement.

In *Muhammad v. Close*, a Michigan state prisoner brought a § 1983 suit against a corrections officer alleging that the officer subjected him to mandatory prehearing lockup in retaliation for prior lawsuits and grievance proceedings

---

[18] *Id.* (emphasis added) (internal citations and quotation marks omitted); ECF No. 12 at 10.

[19] *Id.* at 644.

[20] *See id.* at 645–46.

[21] *Id.* at 646–47.

6

against the officer.[22]  Muhammad sought $10,000 in damages.[23]  Respondent here cites a partial quote from the opening lines of the opinion: "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action."[24]

The Court explained that because Muhammad's suit would not undermine his conviction or sentence or the state's calculation of time served, his claim did not implicate habeas state exhaustion concerns or implicate *Heck*'s favorable-termination requirement.  Thus, it was not a "core" habeas claim and could be brought under § 1983.[25]

In sum, *Preiser*, *Nelson*, and *Muhammad* all dealt with when a state prisoner may file suit under § 1983.  *Preiser* held that prisoners may not bring "core" habeas claims under § 1983.  *Nelson* and *Muhammad* dealt with whether the specific claims raised there were such "core" claims and thus required to be brought in habeas.  Each touched on the scope of § 2254 only in the context of deciding the appropriate limits of § 1983.  Thus, none reached the question of the appropriate limits of § 2254, let alone § 2241.

---

[22] *Id.* at 753 (discussing Muhammad's amended complaint, which sought only monetary damages for the six days of prehearing detention and did not seek expungement of the underlying disciplinary charge).

[23] *Id.* at 752.

[24] *Id.*  Respondent quotes only the first half of the sentence.

[25] *Id.* at 754.

7

### 2.    The Ninth Circuit's decision in *Nettles v. Grounds*

California state prisoner Nettles filed a federal habeas petition seeking to expunge a rules violation report and restore 30 days of postconviction credits that he had lost as a result of the violation, which he argued delayed his parole hearing and constituted grounds for future denial of parole.[26]  The district court granted the state's motion to dismiss on the grounds that Nettles could not show that expungement of the rules violation report was likely to accelerate his eligibility for parole.[27]

A divided en banc panel of the Ninth Circuit affirmed.[28]  The majority began by summarizing the above Supreme Court precedent holding that state prisoners may not bring core habeas claims under § 1983.[29]  The majority then adopted "the correlative rule that a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus."[30]  Because Nettles's claim did not necessarily spell speedier release, it did not fall within the habeas "core" and therefore needed to be brought, if at all, under § 1983.[31]

---

[26] 830 F.3d 922, 927 (2016).

[27] *Id.*  Nettles had numerous violations in addition to the challenged violation and the parole board also took issue with the nature of his crime and purported lack of remorse.  *Id.* at 926.

[28] *Nettles* was decided by a 5–1–5.  Judge Ikuta wrote the majority opinion joined by Judges Rawlinson, Clifton, Callahan, and N.R. Smith; Judge Hurwitz wrote a concurrence; and Judge Berzon wrote a dissent joined by Judges Thomas, Fletcher, Muguia, and Nguyen.

[29] *Id.* at 927.

[30] *Id.*

[31] *Id.* at 930 (internal citation and quotation marks omitted).

8

The majority read the Supreme Court's prior decisions as strongly suggesting that "habeas is available only for state prisoner claims that lie at the core of habeas and is the exclusive remedy for such claims, while § 1983 is the exclusive remedy for state prisoner claims that do not lie at the core of habeas" but acknowledged that the Supreme Court "ha[d] not provided an express ruling on the scope of habeas . . . ."[32]   In addition to *Preiser*, *Heck*, and *Muhammad*, the majority cited to Justice Scalia's concurrence in *Wilkinson v. Dotson*,[33] which the Supreme Court cited favorably in dicta in *Skinner v. Switzer*.[34]   According to the majority, absent a direct ruling, this "considered dicta" should be given deference as "prophecy of what the court might hold."[35]

The majority criticized the dissent's reliance on cases in which federal prisoners challenged the actions of the Bureau of Prisons under 28 U.S.C. § 2241.[36]   The majority countered that none of those decisions shed light on the issue before it: whether Nettles's claim was cognizable under § 2254.[37]   The majority then acknowledged that none of the Supreme Court dicta on which it relied in formulating its new § 2254/§ 1983 exclusivity rule involved the rights of federal prisoners, whose claims are governed by different standards and to whom § 1983 would not apply.[38]   Because the instant case "involve[ed] a state prisoner's

---

[32] *Id.* at 930.

[33] 544 U.S. 74 (2005).

[34] 562 U.S. 521 (2011).

[35] *Nettles*, 830 F.3d at 931.

[36] *Id.* at 931.

[37] *Id.*

[38] *Id.* at 931, n.6.

action under 28 U.S.C. § 2254," the court concluded it need not address how its holding would apply to relief sought by prisoners in federal custody[39]—the precise situation here.

In sum, while core habeas claims must be brought in habeas, the Supreme Court has left open the use of habeas for other types of claims. The Ninth Circuit has foreclosed state prisoners from using § 2254 for claims outside the habeas core, but the court left open whether federal prisoners could use § 2241 for those same claims. It appears that the Tenth, Eighth, and Seventh Circuits have adopted positions similar to the Ninth Circuit, while the D.C., Second, Third, Sixth, and First Circuits have or would permit the use of habeas to challenge unconstitutional conditions of confinement.[40] This has led to mixed results for

---

[39] *Id.* Only some portions of Judge Ikuta's opinion have the support of the majority of the en banc court. The remainder of the legal justification for the rule adopted, section II(B), was not joined by Judge Hurwitz. In his partial concurrence, Judge Hurwitz voiced his opinion that the Supreme Court dicta on which the majority opinion relied in section II(A) was entitled to great deference. He wrote that "[w]ere we approaching this matter on a clean slate, traditional principles of statutory construction," i.e., the plain text of § 1983 and § 2254 "might lead [him] to a different result." *Id.* at 938 (Hurwitz, J. concurring in part). Thus, it is likely Judge Hurwitz would not have joined the majority if he had the benefit of the Supreme Court's later decision in *Ziglar v. Abbasi*, discussed below.

[40] *Poree v. Collins*, 866 F.3d 235, 244–45 n. 26, 27 (5th Cir. 2017) (laying out circuit split); *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014) ("Our precedent establishes that one in custody may challenge the conditions of his confinement in a petition for habeas corpus"); *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying challenges to the execution of a federal sentence . . ."); *United States v. DeLeon*, 444 F.3d 41, 59 (1st Cir. 2006) ("If the conditions of incarceration raise Eighth Amendment concerns, habeas corpus will lie."); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) ("We have ourselves held that § 2241 allows a federal prisoner to challenge the 'execution' of his sentence in habeas").

those seeking habeas relief in the wake of the COVID-19 pandemic.[41]  For the reasons discussed below, this Court should find that Petitioners' claim is cognizable under § 2241.

> **3.** **This Court should hold that Petitioners' claim challenging the conditions of their confinement is cognizable under 28 U.S.C. § 2241.**

As explained above, *Nettles* was premised on Supreme Court dicta up until that point, particularly the Supreme Court's 2011 decision in *Skinner v. Switzer*. Six years after *Skinner* and one year after *Nettles,* the Supreme Court decided *Ziglar v. Abbasi*.[42]

In response to the September 11 terrorist attacks, the federal government ordered hundreds of illegal aliens to be taken into custody and held pending a determination whether a particular detainee had connections to terrorism.  Six of those prisoners filed suit against the executive officials responsible for the policies causing their detention and the wardens of the facility where the prisoners were detained under harsh conditions, some of which were not imposed pursuant to official policy, for between three and six months.[43]  The prisoners sought damages under the implied cause of action theory adopted in *Bivens*.[44]

---

[41] ECF No. 12 at 12 n.3; *Wilson v. Ponce*, ---F.Supp.3d---, 2020 WL 3053375 (C.D. Cal. Jun. 10, 2020) (Fitzgerald, J.) (noting decisions on both sides).

[42] 137 S.Ct. 1843 (2017).

[43] 137 S.Ct. 1852.

[44] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); *Ziglar*, 137 S.Ct. at 1852–53.  The prisoners also brought a claim under 42 U.S.C. § 1985(3), which forbids certain conspiracies to violate equal-protection rights.

The Court first considered the prisoners' detention-policy claims, which did not include their claims that the Warden allowed guards to abuse them over and above these policies.[45]  The Court declined to imply a *Bivens* cause of action for these claims because special factors showed that whether a damages action should be allowed was a decision for Congress, not the courts.[46]  The Court reasoned that the claims involved high-level executive policy decisions implicating national-security concerns and despite that more than 16 years had passed since the September 11 attacks and that Congress was well aware of these detention conditions, at no point did Congress choose to create a damages remedy for them.[47]

In reaching this conclusion, the Court wrote that "it is of central importance" that "this is not a case like *Bivens* or *Davis* in which it is damages or nothing."[48]  The Court reasoned that, "[u]nlike the plaintiffs in those cases, [the prisoners] do not challenge individual instances of discrimination or law-enforcement overreach, which, due to their very nature are difficult to address except by way of damages actions after the fact."[49]  The prisoners instead

---

[45] *Id.* at 1858–59.

[46] *Id.* at 1860.  The Court first explained that a special-factors analysis was necessary because the prisoners' claims bore little resemblance to the three *Bivens* claims the Court had approved in the past.  *Id.* at 1854–60 (explaining *Bivens* history; three contexts in which *Bivens* claims had been recognized; and setting forth special-factors analysis that must be conducted before expanding *Bivens* to new claims).

[47] *Id.* at 1861–62.

[48] *Id.* at 1862 (internal citation and quotation marks omitted).  *Bivens* involved illegal search and seizure.  In *Davis*, an administrative assistant sued a Congressman for firing her because she was a woman.  442 U.S. 228 (1979)

[49] 137 S.Ct. at 1862.

12

"challenge large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners.  To address those kinds of decisions, detainees may seek injunctive relief.  And in addition to that, *we have left open the question whether they might be able to challenge their confinement conditions via a petition for a writ of habeas corpus.*"[50]

Indeed, the Court continued, the habeas remedy "would have provided a faster and more direct route to relief than a suit for money damages."[51]  "A successful habeas petition would have required officials to place respondents in less-restrictive conditions immediately; yet this damages suit remains unresolved some 15 years later."[52]  The Court concluded that it need not determine the scope or availability of the habeas corpus remedy, a question that was not before the Court and had not been briefed or argued, but noted that the prisoners had "other alternative forms of judicial relief available to them" and when alternative methods of relief are available, *Bivens* is usually not.[53]

Although dicta, the Supreme Court's recent decision in *Ziglar* strongly suggests that federal detainees or prisoners may challenge the conditions of their confinement, including large-scale policy decisions affecting hundreds of prisoners, in habeas—a door that *Nettles* also left open.  That opinion also suggests that habeas need not be the exclusive remedy available in order for an

---

[50] *Id.* at 1863.

[51] *Id.*

[52] *Id.*

[53] *Id.*

13

inmate to use it, particularly where swift relief is needed.[54]  The Court's more recent statement in *Ziglar* is a greater indication of what the Court may hold in the future than *Nettles*'s prediction and the earlier statements Respondent cites. And, as mentioned above, several Circuit Courts of Appeal have permitted prisoners to challenge unconstitutional conditions of confinement through habeas.[55]

There is further reason to permit Petitioners to proceed under § 2241 here. Respondent argues throughout its motion to dismiss that Petitioners should have filed suit under § 1983.[56]  This ignores that Petitioners are federal detainees challenging actions made under color of federal, not state, law.  Thus, § 1983 is unavailable.  And, as the Supreme Court's decision in *Ziglar* makes clear, it will not readily infer new causes of actions under *Bivens*.  In any event, *Bivens* actions are limited to monetary damages against federal officials in their individual capacities and do not extend to private actors acting under color of federal law.[57]  Thus, Respondent is wrong to repeatedly suggest to this Court that Petitioners should have brought suit under § 1983.  Additionally, an implied cause of action under *Bivens* is also unavailable and could not provide the remedy Petitioners seek.

---

[54] *Ziglar*, 137 S.Ct. at 1863 (Noting that, to address challenged detention policies the prisoners could have sought injunctive relief "[a]nd, in addition to that," the Court had left open whether they may also be able to do so through habeas).

[55] *Supra* n.40.

[56] *See* ECF No. 12 at 14.

[57] *Correctional Servs Corp v. Malesko*, 534 U.S. 61, 62 (2001) (declining to extend *Bivens* to private entities acting under color of federal law).

Finally, the unique circumstances of this case warrant applying § 2241 here.  *Ziglar* suggested that habeas would have been the most expedient way for the prisoners there to immediately improve their conditions of confinement.[58] Petitioners here challenge the constitutionality of their detention conditions amidst a once-in-a-century global pandemic, where the pandemic and these conditions are rapidly evolving, the stakes are high, and time is of the essence.  If there were ever a time for federal detainees to seek relief under § 2241, this would be it.

That leaves Respondent's argument that Petitioners must proceed under the Bail Reform Act or the PLRA.[59]  First, Petitioners could not seek to alter the conditions of their confinement, or secure their release from unconstitutional conditions of confinement, under the Bail Reform Act.  While it is true, as Respondent points out, that courts may reopen detention hearings at any time to consider new information that has a material bearing on the detention decision,[60] that decision does not, unfortunately, consider the defendant's health or safety. Instead, the court considers whether any conditions will reasonably assure the appearance of the person as required and the safety of "any other person or the community."[61]  Absent from the list of factors to be considered in making this determination is the defendant's health or the conditions of his confinement.[62]

---

[58] *Ziglar*, 137 S.Ct. at 1862–63.

[59] ECF No. 12 at 14, 17.

[60] ECF No. 12 at 14 (citing 18 U.S.C. § 3142(f)(2)(B)).

[61] 18 U.S.C. § 3142(g).

[62] Relevant factors include: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and

15

As to Respondent's argument that Petitioners must proceed under the PLRA, the PLRA is not itself a private cause of action—it merely provides conditions for prisoner lawsuits brought under other statutes.[63]

In conclusion, this Court should hold as a threshold legal matter that Petitioners may proceed under § 2241. This is bolstered by the fact that none of the other avenues Respondent cites are available routes to recovery, let alone exclusive or required routes.

## B.   Petitioners have satisfied § 2241's prudential exhaustion requirement.

The PLRA does not apply to habeas corpus proceedings.[64] However, as a prudential matter, courts do require habeas petitioners to exhaust all available judicial and administrative remedies before seeking relief under § 2241.[65] But this exhaustion requirement is subject to waiver because it is "not a judicial

---

characteristics of the person; (4) the nature and seriousness of the danger to any person or the community should the person be released. *Id.*

[63] 42 U.S.C. § 1997.

[64] 18 U.S.C. § 3626(g)(2); *Scott v. LaMarque*, 27 F. App'x 858, 859 (9th Cir. 2001) ("[T]he amendments to 28 U.S.C. 1915 made by the [PLRA] . . . do not apply in habeas proceedings"). Even if it did, the PLRA does not require exhaustion when circumstances render administrative remedies "unavailable," such as when it operate as a simple dead end with officers unwilling or unable to provide relief or where they thwart the grievance process. *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). For the same reasons § 2241 exhaustion would be futile, administrative remedies under the PLRA are unavailable.

[65] *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

prerequisite."[66]  Typically, exhaustion can be waived "if pursuing those [administrative] remedies would be futile."[67]

Here, Petitioner Carranza requested COVID-19 testing but was denied.[68] Numerous other detainees have also requested testing without success.[69]  The Federal Public Defender's Office has tried to accomplish increased testing through motions practice, but that, too, has been unsuccessful.[70]  Medical kites are not answered for days and sometimes weeks, and requests for treatment or testing are denied.[71]  When detainees attempt to protest the conditions at NSDC or get more information, they are constantly given the run-around, with NSDC blaming the USMS and the USMS blaming NSDC.[72]  Additionally, Petitioners do not live in a bubble at NSDC and, if successful, would not be given a private suite.  To improve Petitioners' conditions of confinement may well mean improving conditions for all.  Attempting to kite their way to these types of large-scale policy changes would be futile.  And where detainees have attempted to join together to do so, those efforts have been thwarted.[73]

---

[66] *Id.*

[67] *Id.* (internal citation omitted).

[68] ECF No. 1 at ¶ 19.

[69] *Id.* at ¶ 20.

[70] *See, e.g.*, *U.S. v. Martell-Perkins*, 2:17-cr-00129-APG-GWF ECF No. 66 (emergency motion requesting order that symptomatic client be tested for COVID-19); *U.S. v. Hunter*, 2:12-cr-00132-JAD-VCF (same).

[71] ECF No. 1 at ¶ 57.

[72] *Id.* at ¶ 65.

[73] *Id.* at ¶ 74.

For these reasons, this Court should find that exhaustion would be futile and waive § 2241's prudential exhaustion requirement.  To the extent this Court is inclined to dismiss based on lack of exhaustion, it should decline ruling on that issue until after the reply to the petition has been filed because undersigned is in the process of gathering past-submitted grievances from Petitioners and those similarly situated, which will further demonstrate futility.

**C.  Petitioners have standing.**

Respondent next argues that Petitioners lack standing because they fail to demonstrate that the conditions at NSDC are particular to them or that they have sustained harm from these conditions.[74]  That other detainees are subject to the same unconstitutional conditions as Petitioners does not mean that Petitioners lack standing.  Respondent offers no authority that this is the case, nor was it an issue in *Ziglar* that the prisoners were six of hundreds subjected to the detention policies they challenged.  In fact, it appears that this made habeas relief even more appropriate in the Court's view.

Petitioners have also alleged direct harm as a result of Respondent's unconstitutional COVID-19 policies.  For example, Petitioner Carranza was exposed to Petitioner Kim while his test was pending.[75]  Petitioner Kim collapsed after testing positive for the virus and was handcuffed to a wheelchair before being placed in disciplinary housing.[76]  The Petitioners are at constant risk of infection and reinfection due to Respondent's handling of the pandemic and they

---

[74] ECF No. 12 at 15.

[75] ECF No. 1 at ¶ 19.

[76] *Id.* at ¶ 22.

18

are constantly subjected to more restrictive conditions of confinement than they would otherwise be, including being cycled in and out of quarantine/cohort status.

Relatedly, Respondent argues that Petitioners cannot show an "actual and imminent" harm from COVID-19 because there is currently only one positive test at the facility.[77]  This argument would be more persuasive if NSDC were not continuing to accept new detainees, including transfers from other detention facilities, and if it were mass testing or at least testing those with symptoms. Due to the lack of transparency and testing at NSDC, the true number of COVID-19 cases is likely much higher than what Respondent reports.[78]

Respondent should not be permitted to use this lack of transparency to gain dismissal by arguing that "if the conditions at NSDC are as unsafe as Petitioners claim, they would not need a 'fact-finding' to determine what those 'actual conditions' are."[79]  Petitioners' request for court-supervised fact-finding will permit this Court to resolve this case based on the actual conditions at NSDC and not only those Respondent chooses to reveal.  Many courts have ordered court-supervised fact finding precisely because jails and prisons are difficult to

---

[77] ECF No. 12 at 16.

[78] ECF No. 1 at ¶¶ 17, 70 (describing how symptomatic detainee was removed and quarantined in disciplinary housing but not tested).

[79] ECF No. 12 at 16.

penetrate.  For example: *Wilson v. Ponce*;[80] *Stirling v. Salazar*;[81] *In re Coronavirus/COVID-19 Pandemi*;[82] *Gomes v. Department of Homeland*

---

[80] 2020 WL 5118066, at *7 (July 14, 2020).  Before ruling on the merits of Petitioners' request for TRO and preliminary injunction (based on a stand-alone Constitutional claim following Court's dismissal of § 2241 claim), the Court appointed an independent expert to conduct a site visit at FCI Terminal Island to opine as to current conditions and best practices.  Notably, the Court also determined that administrative exhaustion was unavailable under the PLRA.  The site inspector issued a troubling report despite Respondents' claims that they "ha[d] taken a number of actions to address COVID-19 and that the situation at Terminal Island ha[d] significantly improved," further highlighting the importance of judicial fact-finding in the prison context.  The report is publicly available:
https://www.aclusocal.org/sites/default/files/report_of_dr._michael_rowe.pdf (last accessed September 21, 2020.).

[81] 3:20-cv-00712, ECF No. 24 (D. Or. 2020).  The docket also refers to *Stirling v. BOP, et al.*, because the petitioner had originally filed pro se against the BOP.  After the FPD was appointed, it filed an amended petition/complaint naming the proper respondent, the Warden of FCI Sheridan.

The Court granted partial interim relief requiring respondent to provide the court and FPD with the following information within two days: (1) current protocols for screening and testing for COVID-19; (2) the number of inmates at the facility who have been tested and the number of positive tests; (3) number of staff and correctional ; (4) all efforts currently undertaken at the facility to slow the spread of COVID-19.  The Court defined protocols as including, but not limited to: (a) the specific type of COVID-19 test being employed; (b) the typical or average time the facility must wait to receive results; (c) the criteria for determining who will be tested, when they will be tested, and what frequency and under what circumstances tests will be re-administered, including persons who have tested negative.

[82] Administrative Order No. 2020-14 (E.D.N.Y. Apr. 2, 2020). The General order requires bi-monthly status updates for detention facilities housing defendants in cases filed within the district, including regarding (1) protocols for screening and testing inmates, staff, and others entering or leaving each facility; (2) the number of inmates tested and the number of positive tests; (3) the number of staff and other correctional workers testing positive; and (4) "[a]ll efforts

1
2
3

*Security*;[83] and *Urdaneta v. Keeton*.[84]  Due to the lack of transparency and testing at NSDC, court-supervised fact-finding is appropriate here and Petitioners' request for it does not show that they lack standing or undermine their claim.

4

**D.     The Federal Public Defender's Office can represent Petitioners.**

5
6
7

As a last-ditch argument, Respondent seeks dismissal because the Federal Public Defender's Office has not requested to be appointed in this case.[85]  The government is wrong for two main reasons.

8
9
10

First, the Federal Public Defender's Office has been appointed to represent Petitioners in their underlying criminal cases,[86] and that appointment extends to ancillary proceedings.[87]

11
12
13
14
15

Second, even if this were not an ancillary matter, 18 U.S.C. § 3006A(A)(2)(B) authorizes the court to provide representation for any financially eligible person seeking relief under § 2241 when "the interests of justice so require."  As explained above, Petitioners qualified for appointment of counsel when they made their initial appearances in their respective criminal

16
17

---

undertaken to mitigate the spread of COVID-19." *Available at* https://bit.ly/3l6zP9F.

18
19

[83] 20-cv-453, ECF No. 123 at 56–61 (D.N.H. May 14, 2020). The Court ordered a report concerning detailed issues related to testing and mitigation measures in local jail holding federal detainees.

20
21
22
23

[84] 20-cv-654, ECF No. 52 at 22 (D. Ariz. May 11, 2020). This Order solicited proposed measures from parties to ensure adequate health standards in a federal detention facility including placement in single-occupancy cell, meals delivered to cell, free, unlimited PPE, hygiene supplies, and disinfectant, requiring all staff to wear PPE, and requiring testing.

24

[85] ECF No. 12 at 19.

25

[86] *United States v. Carranza*, 2:19-cr-00310-RFB-BNW, ECF No. 9 (D. Nev.); *United States v. Kim*, 2:18-mj-00836, ECF No. 10 (D. Nev.).

26

[87] 18 U.S.C. § 3006A(c).

1   cases.  Their financial situations have not improved while in custody, and they

2   remain indigent.  Due to the complexity of the above-discussed legal issues, the

3   important issues at stake, and the likelihood of success on the merits,

4   appointment of counsel is in the interest of justice.  Additionally, undersigned is

5   aware of at least one other case where the Federal Public Defender's Office has

6   been appointed to represent prisoners challenging conditions under § 2241 in the

7   context of COVID-19, *Stirling v. Salazar*.[88]  In an abundance of caution,

8   undersigned will separately move to be appointed.

### Conclusion

10  This Court should hold as a threshold legal matter that Petitioners may

11  proceed under § 2241.  This Court should next find that Petitioners have satisfied

12  § 2241's prudential exhaustion requirement.  Respondent fails to show that

13  Petitioners lack standing simply because other detainees at NSDC are subject to

14  the same or similar unconstitutional conditions.  Petitioners' request for court-

15  supervised fact finding also does not deprive them of standing.  Finally, this

16  Court should find that the Federal Public Defender's Office may represent

17  Petitioners, either by deeming this an ancillary proceeding to their underlying

18  criminal cases or by appointment under 18 U.S.C. § 3006A(2)(b), for which

19  undersigned will separately move out of an abundance of caution.  This Court

20  should therefore deny Respondent's motion to dismiss and order the requested

---

[88] 3:20-cv-00712, ECF No. 24 (D. Or. 2020).  The docket also refers to *Stirling v. BOP, et al.*, because the petitioner had originally filed pro se naming the BOP, Sheridan FDC, and Sheridan FDC staff.  ECF No. 1.  Because Stirling had already been sentenced and was serving a BOP sentence, the FPD was not currently representing him as is the case here.  The Court sua sponte appointed the Oregon Federal Public Defender's Office in the interest of justice under 18 U.S.C. 3006A(a)(2)(B).  ECF No. 4.  After the FPD was appointed, it filed an amended petition/complaint naming the proper respondent, the Warden of FCI Sheridan.  ECF No. 16.  The petition remains pending.

interim judicial fact-finding,[89] which will aid the Court in resolving the factual issues.[90]

Dated: September 21, 2020.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Erin Gettel*
Erin Gettel
Assistant Federal Public Defender

---

[89] ECF No. 1 at ¶ 75.

[90] The parties filed a stipulation expediting briefing on the above legal issues while extending Petitioners' time to reply to the Respondent's answer/response to the petition to October 1, 2020.  ECF No. 14.

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that he is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on September 21, 2020, he served an electronic copy of the above and foregoing **Response to Motion to Dismiss (ECF No. 12)** by electronic service (ECF) to the person named below:

NICHOLAS A. TRUTANICH
United States Attorney
HOLLY A. VANCE
Assistant United States Attorney
400 S. Virginia Street
Suite 900
Reno, NV 89501

*/s/ Brandon Thomas*
Employee of the Federal Public Defender

24