NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644

HOLLY A. VANCE
Assistant United States Attorney
United States Attorney's Office
400 S. Virginia Street, Suite 900
Reno, NV 89501
(775) 784-5438
Holly.A.Vance@usdoj.gov

*Attorneys for Defendant/Respondent*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Jess Elijio Carranza, Jimmy Carter Kim,<br><br>        Plaintiffs/Petitioners,<br><br>    v.<br><br>Brian Koehn, Warden, Nevada Southern Detention Center,<br><br>        Defendant/Respondent. | Case No. 2:20-cv-01586-GMN-DJA<br><br>**Respondent's Reply in Support of Motion to Dismiss** |

Respondent Brian Koehn hereby replies to Petitioners' Response to Motion to Dismiss. (ECF No. 15). For the reasons argued below, Petitioners' habeas petition should be dismissed for lack of jurisdiction and failure to exhaust administrative remedies.

## I.  Argument

**A.    The overview of circuit law provided by Petitioners is inaccurate.**

In moving to dismiss, Respondent argued that Petitioners' claims are not cognizable in habeas because they challenge the conditions—not the validity—of their confinement. (ECF No. 12 p. 10). Petitioners respond that the Supreme Court and Ninth Circuit have left open the question whether an inmate may bring a conditions-of-confinement claim in habeas. (ECF No. 15 pp. 3-4, 8-11). Petitioners then describe a split among the circuit courts as to that issue, asserting: "It appears that the Tenth, Eighth, and Seventh Circuits have adopted positions similar to the Ninth Circuit, while the D.C., Second, Third, Sixth,

1

and First Circuits have or would permit the use of habeas to challenge unconstitutional conditions of confinement." (ECF No. 15 p. 10). Petitioners' characterization of the circuit court split is inaccurate.

In fact, the Tenth, Eighth, Seventh, *and* Sixth Circuits have all concluded that conditions-of-confinement claims are *not* cognizable in habeas. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035–38 (10th Cir. 2012); *Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014); *Glaus v. Anderson*, 408 F.3d 382, 387-88 (7th Cir. 2005); *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013). The Eleventh Circuit has also determined, in an unpublished opinion, that conditions-of-confinement claims are precluded under habeas. *Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) (per curiam).

Petitioners cite *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) to conclude that the Third Circuit "would permit the use of habeas to challenge . . . conditions of confinement." (ECF No. 15 at 10). However, a more recent Third Circuit decision affirmed the dismissal of a habeas petition for lack of jurisdiction, *Cardona v. Bledsoe*, 681 F.3d 533 (3d Cir.), *cert. denied*, 568 U.S. 1077 (2012), because the petitioner's claims did "not concern the execution of his sentence." *Id.* at 537. The state of the law within the Third Circuit is thus less clear as to the cognizability of conditions-of-confinement claims brought under habeas than Petitioners represent.

Contrary to Petitioners' representation, a majority of circuit courts do not allow conditions-of-confinement claims under habeas while it appears only the D.C., First, and Second Circuits do. *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014); *United States v. DeLeon*, 444 F.3d 41, 59 (1st Cir. 2006); *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008).[1] Moreover, it also appears that a majority of district courts—within this circuit and elsewhere—agree that habeas is not the proper vehicle for raising challenges based on

[1] The Supreme Court has left the issue open. *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979). The Ninth Circuit has not yet expressly ruled on the issue. *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc); *see also Roman v. Wolf*, No. 20-55436, 2020 WL 5683233 (9th Cir. Sept. 23, 2020) (declining to determine if, in an immigration case, a district court may provide release or other injunctive relief to conditions of confinement claims brought under habeas).

conditions of confinement, such as those arising from COVID-19. *See Wilson v. Ponce*, 2020 WL 3053375, at *10 (C.D. Cal. June 8, 2020) (denying habeas relief for alleged conditions-of-confinement claims arising from COVID-19); *Alvarez v. Larose*, 2020 WL 2315807, at *3 (S.D. Cal. May 9, 2020) (dismissing habeas petition where petitioners' claims were "based solely on the current conditions … given the COVID-19 pandemic"); *Bolden v. Ponce*, 2020 WL 2097751, at *1 (C.D. Cal. May 5, 2020) (dismissing habeas petition based on dangers posed by COVID-19 for lack of jurisdiction, citing Ninth Circuit precedent, and noting that such claims are properly brought under *Bivens*); *Bolanos v. Jenkins*, 2020 WL 3251151, at *2 (N.D. Cal. June 16, 2020) (dismissing habeas petition challenging COVID-19 conditions for lack of jurisdiction); *Sweeney v. Herrara*, 2020 WL 4980062, at *2 (C.D. Cal. June 8, 2020) (holding that petitioner's Eighth Amendment challenges to COVID-19 conditions "are not cognizable" in habeas); *Jenkins v. Noonan*, 2020 WL 2745234, at *2 (S.D. Cal. May 27, 2020) (concluding that habeas is not the "appropriate vehicle" for raising a Fourth Amendment challenge to the conditions of confinement arising from COVID-19); *Eyayu v. Wolf*, 2020 WL 4727001, at *2 (S.D. Tex. Aug. 14, 2020) (holding "it inappropriate to use habeas petitions to challenge an immigration detainee's conditions of confinement during the COVID-19 pandemic"); *Codner v. Choate*, 2020 WL 2769938, at *6 (D. Colo. May 27, 2020) (dismissing habeas petition raising COVID-19 issues because habeas "is not the proper vehicle for a conditions of confinement claim"); *Toure . v Hott*, 2020 WL 2092639, at *7 (E.D. Va. Apr. 29, 2020) (rejecting habeas claim raising COVID-19 challenges because "the majority of the Circuit Courts that have addressed the issue in published opinions have determined that conditions of confinement claims are not cognizable under [habeas]"); *Mescall v. Hemingway*, 2020 WL 4584028, at *3 (E.D. Mich. Aug. 10, 2020) (holding that petitioner's claims raising COVID-19-related challenges are not cognizable in habeas).

In sum, courts—both circuit and district—agree with Respondent that COVID-19-related claims challenging the conditions of confinement are not cognizable in habeas. Given the sheer number of decisions and the sound legal reasoning on which those

1   decisions are based, this Court should adopt the same analysis here and dismiss Petitioners'

2   habeas petition for lack of jurisdiction.[2]

3   **B.   Petitioners have failed to satisfy the elements of standing, thereby depriving this**
      **Court of jurisdiction.**

4

5   Standing is a jurisdictional prerequisite to filing suit in federal court. *Washington v.*

6   *Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017). To establish "case or controversy" standing, a

7   plaintiff must demonstrate: 1) "a concrete and particularized injury" that is "actual or

8   imminent"; 2) the injury must be "fairly traceable" to the defendant; and 3) a favorable

9   decision by the Court will redress the harm. *Id.*

10   Here, Petitioners base their claims about conditions at NSDC on allegations

11   regarding harms suffered by other detainees who are not parties to this action. (ECF No. 12

12   pp. 15-16) But Petitioners lack standing to assert challenges on behalf of the entire

13   population of NSDC detainees, or the individual NSDC detainees referenced in the Petition

14   who are not parties to this action. (ECF No. 12 pp. 15-16). Petitioners respond that "it [was

15   not] an issue in [*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)] that the prisoners were six of

16   hundreds subjected to the detention policies they challenged." (ECF No. 15 p. 18). *Ziglar*,

17   however, was a class action lawsuit; Petitioners' case is not. Petitioners' reliance on *Ziglar* is

18   thus inapposite. Because Petitioners have failed to demonstrate that they may sue on behalf

19   of other detainees who are not named parties in the case, harms allegedly suffered by those

20   detainees are irrelevant to this case, and Petitioners lack standing to bring this action. *See*

21   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) ("[F]ederal courts must

22   hesitate before resolving a controversy, even one within their constitutional power to

23   resolve, on the basis of the rights of third persons not parties to the litigation. Such a

24   _____

25   [2] It also appears that cases allowing habeas relief for COVID-19-related challenges involved
      requests for *release* rather than requests for *modification* of the conditions of confinement, as
26   requested here. *See, e.g., Bystron v. Hoover*, 2020 WL 1984123, at *4 (M.D. Pa. Apr. 27,
      2020) (allowing petitioner to proceed with his habeas petition "insofar as he seeks release
27   from detainment … based on the COVID-19 pandemic"); *Saillant v. Hoover*, 2020 WL
      1891854, at *3 (M.D. Pa. Apr. 16, 2020) (considering the merits of petitioner's habeas
28   petition challenging his "continued detention" based on COVID-19).

4

concern cuts to the heart of the case-and-controversy of Article III.  Courts should not adjudicate rights unnecessarily; the real parties in interest in an adversarial system are usually the best proponents of their own rights.").

Petitioners also lack standing because their habeas petition fails to demonstrate "actual or imminent" harm to Petitioners themselves. (ECF No. 12 pp. 16-17). Petitioners respond that the petition's allegations show they "are at constant risk of infection and reinfection due to Respondent's handling of the pandemic[.]" (ECF No. 18 p. 18). Petitioners' assertions are pure speculation.  As evidence of "actual or imminent" harm, they offer stale declarations from two "experts" who have never visited NSDC and whose testimony fails to mention—let alone discuss—NSDC or Petitioners. (ECF Nos. 3 pp. 2-3; 3-1 pp. 2-6).[3] The habeas petition also references a third declaration that is nowhere to be found in the Court filings in the case. (ECF No. 1 p. 7 n. 21). Respondent alerted Petitioners to these declaration deficiencies in his motion to dismiss (ECF No. 12 pp. 20-21), but Petitioners have done nothing to remedy them, thereby underscoring the lack of "actual or imminent" harm they face.

The habeas petition's allegations also ignore the significant measures implemented by Respondent to safeguard the health and well-being of NSDC detainees. (ECF No. 12-1 ¶¶ 12-100). Those protocols comply with the guidelines and recommendations of the Centers for Disease Control and Prevention ("CDC"). (*Id.*). That those measures are effective and working is demonstrated by the fact that there are no COVID-19 cases in the general NSDC detainee population at this time. (*Id.* ¶ 11). Petitioners' bald, unsubstantiated assertions of harm are thus sheer fiction. Because Petitioners face no "actual or imminent" harm from COVID-19, they lack standing to bring this action. Accordingly, the habeas petition should be dismissed for lack of jurisdiction.

---

[3] Petitioners' experts' declarations are similarly silent as to the likelihood of reinfection after a person has contracted COVID-19.

**C.    Petitioners have failed to establish that exhaustion would be futile, and they are precluded from attempting to make that showing in their reply on the merits.**

A petitioner who is in federal custody and wishes to seek habeas relief must first exhaust available administrative and judicial remedies. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). It is only after a petitioner has fully exhausted those remedies that he is entitled to present his claims in federal court. *Id*; *Vela v. McGrath*, 2009 WL 277535, at *1 (E.D. Wash. Feb. 4, 2009). This exhaustion requirement is "prudential," rather than jurisdictional, and thus the requirement can be waived if exhaustion would be futile. *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003); *Ward*, 678 F.3d at 1045. Nonetheless, the exhaustion requirement is "not lightly to be disregarded." *Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978); *see also Chen v. Viduarri*, 2014 WL 5307928, at *2 (D. Nev. Oct. 16, 2014) ("exhaustion is analogous to subject-matter jurisdiction, personal jurisdiction, venue, abstention, in that all these matters are typically decided at the outset of the litigation").

The Ninth Circuit applies three factors to determine whether it should invoke "prudential exhaustion":

> 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; 2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and 3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez*, 335 F.3d at 881. Here, those factors weigh in favor of requiring exhaustion. First, CoreCivic has a well-developed set of procedures and standards by which to evaluate claims such as those raised here. (*See* ECF No. 12-3 pp. 1-11). In that regard, "Policy 14-100 Detainee Grievance Procedures" specifically provides: "Detainees may utilize this grievance procedure for a wide range of complaints including, but not limited to … [v]iolation of state and federal laws, regulations, or court decisions, including but not limited to *violations of … constitutional rights*[.]" (ECF No. 12-3 p. 4) (emphasis added). Second, allowing Petitioners to bypass the grievance procedures established by Policy 14-

100 might encourage other petitioners to try the same, thereby satisfying the second factor. Third, administrative review is likely to allow CoreCivic to correct any mistakes and to preclude the need for judicial review, particularly where the company has special expertise concerning COVID-19.[4] Under the circumstances, requiring Petitioners to exhaust administrative remedies is appropriate here.

Nonetheless, Petitioners argue that exhaustion would be futile. (ECF No. 15 p. 17). Their habeas petition, however, addresses neither exhaustion nor futility. The Court should reject their attempt to raise those issues for the first time now. In any event, Petitioners' futility argument fails on the merits. The entirety of Petitioners' futility argument is as follows:

> Here, Petitioner Carranza requested COVID-19 testing but was denied. Numerous other detainees have also requested testing without success. The Federal Public Defender's Office has tried to accomplish increased testing through motions practice, but that, too, has been unsuccessful. Medical kites are not answered for days and sometimes weeks, and requests for treatment or testing are denied. When detainees attempt to protest the conditions at NSDC or get more information, they are constantly given the run-around, with NSDC blaming the USMS and USMS blaming NSDC. Additionally, Petitioners do not live in a bubble at NSDC and, if successful, would not be given a private suite. To improve Petitioners' conditions of confinement may well mean improving conditions for all. Attempting to kite their way to these types of large-scale policy changes would be futile. And where detainees have attempted to join together to do so, those efforts have been thwarted.

(ECF No. 15 p. 1) (footnotes omitted). Petitioners have failed to demonstrate that exhaustion would be futile.

---

[4] For example, CoreCivic's Chief Medical Officer is "familiar with the appropriate methods to treat and contain contagious illness in the detention setting, including … COVID-19." (ECF No. 12-4 ¶ 9). He works closely with "infectious disease specialists and correctional medical professionals on the most up-to-date protocols and practices to prevent the spread of this illness" at NSDC. (*Id.* ¶ 10). He also monitors information from the CDC on a daily basis and ensures that NSDC complies with CDC guidelines and recommendations. (*Id.*). In addition, CoreCivic's Facility Support Center ("FSC") "provides ongoing guidance and instruction" to NSDC, "consistent with recommendations of the [CDC]." (ECF No. 12-1 ¶ 13). FSC has also activated its Emergency Operations Center, which "allows for effective communication and guidance … as to daily developments regarding COVID-19 information, CDC guidance[.]" (ECF No. 12-1 ¶ 14). Regular meetings and briefings with COVID-19 experts, along with COVID-19 management plans, further ensure the proper implementation of safety measures to protect against spread of the virus. (*See* ECF No. 12-1 ¶¶ 15-22).

Petitioners' arguments do not include any discussion about what administrative remedies are available, how Petitioners attempted to pursue those remedies, or how they were purportedly denied that opportunity. *See Blankenship v. Meeks*, 2011 WL 4527408, at *3 (D. Haw. Sept. 28, 2011) (rejecting futility argument where petitioner failed to make "a diligent effort to pursue each administrative remedy as it has become available"); *Eckard v. Caraway*, 2019 WL 1521927, at *2 (W.D. Wash. Feb. 20, 2019 ("A prisoner cannot be excused from the exhaustion requirement unless the prisoner establishes that administrative grievance procedures are unavailable or that the prison prevented the prisoner from exhausting his remedies.").

Indeed, Petitioners identify no CoreCivic policy that would purportedly deny them access to administrative remedies. *See Blankenship*, 2011 WL 4527408, at *3 ("courts have generally limited the futility exception to circumstances in which a prisoner has shown that further appeals within the prison system would be denied based on the BOP's official policy"); *Sun v. Ashcroft*, 370 F.3d 932, 942 (9th Cir. 2004) (futility in the habeas context is established "where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be."). Instead, Petitioners make vague assertions about "requested COVID-19 testing," "motions practice," and the like (ECF No. 15 p. 17), without demonstrating that such factors are, in fact, part of the administrative process.[5]

In short, Petitioners' futility arguments are unavailing. Apparently conceding this point, Petitioners request an opportunity to address futility in their reply on the merits (to be filed October 1, 2020). According to Petitioners, their counsel "is in the process of gathering past-submitted grievances from Petitioners and those similarly situated, which will further

---

[5] Petitioners also cite two criminal cases in which defendants who are not parties to this action purportedly sought "to accomplish increased testing" through motions in their criminal cases (ECF No. 15 p. 17 n.70), but these citations fail to establish that it would be futile for detainees at NSDC to exhaust the available administrative remedies, as motions are not part of the grievance process. This is especially true as to Carranza and Kim, who were not even part of the cited cases.

8

demonstrate futility." (ECF No. 15 p. 18). A reply brief addressing the merits of the case, however, is not the proper place to address futility in the first instance. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004) ("Lower courts are, thus, not free to address the underlying merits [of a habeas petition] without first determining the exhaustion requirement has been satisfied or properly waived."); *Vela*, 2009 WL 277535, at *1 ("It is only *after* a petitioner has fully exhausted those remedies that he is entitled to present his claims in federal court.") (emphasis added). Petitioners' approach would deny Respondent an opportunity to respond to their evidence on futility. Petitioners' failure to demonstrate futility in either their habeas petition or response to Respondent's motion to dismiss warrants the dismissal of their petition for failure to exhaust administrative remedies.

**D.   Petitioners are mistaken that the Prison Litigation Reform Act does not apply to their claims.**

The Prison Litigation Reform Act ("PLRA") applies to "any civil action in federal court with respect to prison conditions." 18 U.S.C. § 3626(a)(3). Here, because Petitioners contend their confinement places them at risk for contracting COVID-19, the PLRA applies as an avenue of relief. Petitioners' argument to the contrary (ECF No. 15 p. 16) is unavailing in light of 18 U.S.C. § 3626(a)(3)'s clear language. Thus, Petitioners could have—and indeed should have—pursued their claims under the PLRA. Moreover, the PLRA imposes an exhaustion requirement. *See Porter v. Nussle*, 534 U.S. 516, 519 (2002) (The PLRA requires "prisoners who claim denial of their federal rights while incarcerated to exhaust prison grievance procedures before seeking judicial relief."). Petitioners, however, failed to exhaust administrative remedies under the PLRA, thereby precluding them from obtaining relief for their claims.[6]

**E.   Petitioners are required to seek release under the Bail Reform Act and/or the PLRA.**

Petitioners' habeas petition seeks release from confinement as an alternative remedy. (ECF No. 1 at 21). In moving to dismiss, Respondent argued that Petitioners were

[6] Petitioners' futility claim fails for the reasons argued above.

precluded from seeking release in habeas where they could seek relief via the Bail Reform Act ("BRA") and/or the PLRA. *See Reese v. Warden Phila. FDC*, 904 F.3d 244, 246-48 (3d Cir. 2018) ("a federal detainee's request for release pending trial can only be considered under the Bail Reform Act and not under a § 2241 petition for habeas relief"); *Alvarez v. Larose*, 445 F. Supp. 3d 861, 864 (S.D. Cal. 2020) ("the PLRA applies to Plaintiffs' claims and divests the Court of authority to "grant" their "release"). (ECF No. 12 pp. 17-18). Petitioners respond that they cannot secure their release from unconstitutional conditions under the BRA and a court deciding whether to release is precluded from considering a defendant's "health or safety." (ECF No. 15 p. 15).

Interestingly, although Petitioners now argue a court cannot consider the COVID-19 pandemic and the issues surrounding it under the Bail Reform Act, the Federal Public Defender's Office ("FPD") has consistently argued to the contrary in the criminal context. *See, e.g.*, *United States v. Phuong Tang*, Case No. 2:20-cr-0054-GMN-DJA, ECF No. 34 (attached hereto as Exhibit 1); *United States v. Che Summerfiled*, Case No. 2:20-mj-00231-BMW, ECF No. 10 (attached hereto as Exhibit 2). This shift in position is telling.

The United States continues to argue—consistently—that the COVID-19 pandemic should not be considered in an initial detention hearing under 18 U.S.C. § 3142(g) unless the defendant can show he possesses underlying health conditions that increase their risk to contract and suffer from the disease. *See* 18 U.S.C. § 3142(g)(3)(A) (requiring a court to consider a defendant's "physical condition" as part of a detention decision). Similarly, the United States acknowledges that COVID-19 can be considered under 18 U.S.C. § 3142(i) for a "temporary release." *See* 18 U.S.C. § 3142(i) (court may "permit the temporary release" of a detained defendant if "such release [is] necessary for preparation of the person's defense *or for another compelling reason*") (emphasis added). Under 18 U.S.C. § 3142(i), a court may consider a defendant's physical ailments, including those related to COVID-19, as a "compelling reason" to warrant the defendant's release. *See United States v. Terrone*, 2020 WL 1844793, at *7 (D. Nev. Apr. 10, 2020) (determining that a court should "make an individualized determination as to whether COVID-19 concerns present such a

compelling reason in a particular case that temporary release is necessary."); *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) (requiring individualized determination whether COVID-19 presents compelling reason for release based on original grounds for detention, specificity of professed concerns, and particularized finding whether release could exacerbate risks to defendant or public). Like the BRA, the PLRA allows for the release of an inmate and divests the Court of the power to release Petitioners here. 18 U.S.C. § 3626(a)(3)(B); *Alvarez*, 445 F. Supp. 3d at 864. Accordingly, Petitioners' arguments have no merit.

**F.      The Federal Public Defender's Office is not authorized to represent Petitioners.**

In moving to dismiss, Respondent argued that the record does not reflect that the FPD sought to represent Petitioners in accordance with 18 U.S.C. § 3006A(2)(B). (ECF No. 12 p. 19). That provision requires the Court to provide representation "for any financially eligible person" who "is seeking relief under [28 U.S.C. § 2241" when the Court "determines that the interests of justice so require[.]" 18 U.S.C § 3006A(2). (ECF No. 12 p. 19). Petitioners' counsel moved for appointment on September 28, 2020 (ECF No. 17). Respondent will specifically address the arguments raised in that request in his response to the motion.

For now, the Court should reject Petitioners' contention that defense counsel's appointment to represent them in their criminal cases extends to "ancillary" proceedings such as habeas proceedings. (ECF No. 15 p. 21). As support for that argument, Petitioners cite 18 U.S.C § 3006A(c), which provides: "A person for whom counsel is appointed shall be represented at every stage of the proceedings … including *ancillary* matters appropriate to the proceedings." (*Id.*) (emphasis added). But habeas proceedings are civil in nature and thus they are not "ancillary" to criminal proceedings. *See Copeland v. Ryan*, 852 F.3d 900, 906 (9th Cir. 2017) ("habeas corpus proceedings are 'civil in nature,' not 'criminal'"). Petitioners' argument fails.

Alternatively, Petitioners argue that they qualified for appointment of counsel when they made their initial appearances in their criminal cases and that they continue to qualify

1   "in the interest of justice." (ECF No. 15 pp. 21-22). Petitioners cite no authority to support

2   their argument. In any event, their position ignores the plain language of 18 U.S.C.

3   § 3006A(2)(B), which sets forth specific requirements to be followed before representation

4   in this matter may occur. Petitioners' argument is unavailing.

5   **G.    The Court should disregard Petitioners' erroneous statements of fact.**

6       Petitioners' response includes multiple assertions that are not supported by the

7   evidence. Without citation to any evidence, Petitioners make assertions about testing

8   protocols and unspecified NSDC employees who have "thwarted" other detainees' efforts

9   to "join together" to bring problems to NSDC's attention. (ECF No. 15 p. 17).The Court

10  should disregard these unsupported allegations.

11                            **II. Conclusion**

12      For the reasons argued above, the Court should dismiss Petitioners' Writ of Habeas

13  Corpus Pursuant to 28 U.S.C. § 2241.[7]

14      DATED: September 28, 2020.              Respectfully submitted,

15
16                                             NICHOLAS A. TRUTANICH
                                               United States Attorney
17                                             */s/ Holly A. Vance*
18                                             HOLLY A. VANCE
                                               Assistant U.S. Attorney
19
20
21
22
23
24
25

---

26  [7] Petitioners have not responded to Respondent's challenge of their request for declaratory relief. (ECF No. 12 p. 18). Accordingly, the Court should dismiss that claim. *See Griffin v.*
27  *City of Lake Elsinore*, 2017 WL 2817884, at *2 (D. Nev. June 28, 2017) ("By failing to address arguments in an opposition, a party effectively concedes a claim, making dismissal
28  proper.").