1
2
3
4
5
6                               UNITED STATES DISTRICT COURT
7                                   DISTRICT OF NEVADA
8                                          * * *
9    JESS ELIJIO CARRANZA,                    Case No. 2:20-cv-01586-GMN-DJA
     JIMMY CARTER KIM,
10                                                          ORDER
                     Plaintiffs/Petitioners,
11        v.
12   WARDEN BRIAN KOEHN,
13                   Defendant/Respondent.
14
          Plaintiffs/petitioners Jess Elijio Carranza and Jimmy Carter Kim (Plaintiffs),
15
     represented by the Federal Public Defender, filed this action asserting that their federal
16
     constitutional rights have been violated as a result of inadequate measures at Nevada
17
     Southern Detention Center (NSDC) in Pahrump, Nevada to protect them from
18
     contracting the COVID-19 disease (ECF No. 1).  Plaintiffs have styled their filing as a
19
     petition for a writ of habeas corpus under 28 U.S.C. § 2241 and complaint for
20
     declaratory and injunctive relief.  Defendant-petitioner has filed a motion to dismiss,
21
     raising the question whether this action is properly brought, in part, as a habeas action
22
     (ECF No. 12).  As discussed below, the motion to dismiss is granted in part, and
23
     plaintiffs' habeas claims are dismissed. The action will proceed on Plaintiffs' civil rights
24
     claims.
25
          On August 26, 2020, Plaintiffs, held in federal criminal pretrial detention at
26
     NSDC,[1] filed a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and
27
28
     _____
     [1] NSDC is operated by CoreCivic, which is a private entity (*See* ECF No. 12, p. 3); *see also*
     https://www.corecivic.com/ (all internet materials as last visited October 14, 2020).

                                              1

Complaint for Declaratory and Injunctive Relief" (complaint) (ECF No. 1).  The complaint names NSDC Warden Brian Koehn as defendant in his official capacity as the Plaintiffs' immediate custodian. *Id*. at 4.  Defendant appeared and on September 17, 2020, filed a "Motion to Dismiss and Response to Petition for Writ of Habeas Corpus" with supporting declarations (ECF Nos. 9-13).  Plaintiffs filed a response (ECF No. 15).  Defendant filed a reply and supplemental declarations (ECF No. 18). Plaintiffs filed a supplement to their response (ECF No. 21). They have also sought leave and submitted a surreply (ECF Nos. 22, 22-1).[2]  Defendant argues that Plaintiffs' claims are not cognizable in a habeas action under 28 U.S.C. § 2241.  Thus, he argues that the court lacks subject matter jurisdiction over those claims and cannot grant relief on those claims.

Federal Rule of Civil Procedure 12(b)(1) provides for motions to dismiss for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction, with the power to hear cases only when authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008).  When subject matter jurisdiction is challenged in a motion to dismiss pursuant to Rule 12(b)(1), the burden of establishing subject matter jurisdiction is on the party invoking the court's jurisdiction. *See id*.  The court presumes lack of subject matter jurisdiction until the plaintiff establishes that it exists. *Kokkonen*, 511 U.S. at 377.

Federal Rule of Civil Procedure 12(b)(6) provides for motions to dismiss for failure to state a claim upon which relief can be granted.  A Rule 12(b)(6) motion tests the legal sufficiency of the plaintiff's claims. Dismissal for failure to state a claim is proper only if it is clear the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.

---

[2] The court has considered all responses to the motion to dismiss and supporting declarations submitted by both parties.

1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  The court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*.

The notice pleading standard applicable in ordinary civil actions does not apply in habeas corpus cases; habeas petitions must meet heightened pleading requirements. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994); *see also* Rule 4, Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Notes ("[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error." (quoting *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970))).

The Centers for Disease Control and Prevention ("CDC"), describes the COVID-19 pandemic, which is caused by a novel coronavirus, SARS-CoV-2, as "a serious global health threat." https://www.cdc.gov/coronavirus/2019-nCoV/index.html; https://www.cdc.gov/coronavirus/2019-ncov/global-covid-19/index.html. (all internet materials as last visited October 14, 2020).  As of October 14, 2020, the CDC reported 7,835,007 total cases in the United States, and 215,194 total deaths in the United States from the disease. https://covid.cdc.gov/covid-data-tracker/#cases_totalcases. COVID-19 is highly contagious—"spreading very easily and sustainably between people"—and it is thought to spread "between people who are in close contact with one another (within about 6 feet)," "through respiratory droplets produced when an infected person coughs, sneezes, or talks." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. The CDC states that it may be spread by people who are not showing symptoms. *Id*. The CDC advises that the best ways of protecting

oneself and others is to know how it spreads; wash hands often; avoid close interpersonal contact; cover the mouth and nose with a mask when around others; cover the mouth when coughing or sneezing; clean and disinfect frequently touched surfaces daily; and monitor health daily. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.  The CDC also advises that some people are more likely than others to become severely ill from COVID-19 and that this includes racial and ethnic minority groups, older adults, and people with certain underlying medical conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.  There is currently no vaccine to prevent COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.  On March 12, 2020, Governor Steve Sisolak issued a declaration of emergency in the State of Nevada due to COVID-19. https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-12_-_COVID-19_Declaration_of_Emergency/.  On March 13, 2020, President Donald J. Trump declared the COVID-19 outbreak in the United States a national emergency. https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. Correctional and detention facilities present unique challenges with respect to control of SARS-CoV-2 transmission among incarcerated and detained persons, staff, and visitors. https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

**Plaintiff Jess Elijio Carranza**

Carranza is a federal criminal pretrial detainee at NSDC, charged in Case No. 2:19-cr-00310-RFB-BNW with 1 count of felon in possession of a firearm (ECF No. 1, p. 3).[3]  The petition/complaint states that his jury trial is currently scheduled for October 19, 2020. He alleges that he has been exposed to COVID-19 and has experienced symptoms.  He claims he was housed in Unit 4G with co-plaintiff Kim while Kim awaited

---

[3] Carranza also remains in state custody on charges of assault with a deadly weapon, burglary while in possession of a firearm, and possession of a stolen vehicle and property. Case No. C-19-344450-1.

results of his COVID-19 test. He avers that NSDC personnel have not tested him despite numerous requests.  Carranza says that he suffers from type 1 diabetes and high blood pressure. He has not challenged his detention in his criminal case since his initial appearance (ECF No. 12, p. 5).  Respondents state that medical records reflect that Carranza is 37 years-old with type 2 (non-insulin dependent) diabetes and high blood pressure. *Id.* at 6-7.

**Plaintiff Jimmy Carter Kim**

Kim is also a federal criminal pretrial detainee, charged in Case No. 2:18-mj-00836-DJA with kidnapping and sexual exploitation of children (ECF No. 1, p. 3).[4]  The petition/complaint states that his preliminary hearing currently is scheduled for October 16, 2020. Kim, age 31, tested positive for COVID-19.  He avers that he remained in Unit 4G for 2 days while his test was pending.  After a 14-day medical isolation period, prison personnel returned Kim to his dormitory-style unit but did not retest him. Specifically, Kim alleges:

> In early July, Kim collapsed on the floor in the medical wing after finally being removed from his unit after his COVID-19 test returned positive. Kim's symptoms included fever, chest pains, dry mouth, fatigue, head and body aches, difficulty breathing, stiff joints, lock jaw, and his arms and hands were seizing up. NSDC staff picked him up off the floor, placed him in a wheelchair, handcuffed him, and wheeled him to the hole. Staff did not give Kim any medicine to treat his symptoms, let alone schedule an appointment with a doctor before placing him in the hole.

> The cell in which Kim was placed was filthy; he had no bedding for five hours and no soap until the next day. He was not given medicine to ease his symptoms before being placed in the hole and was forced to drink water out of the sink.

> Kim was not permitted access to a phone to call his attorney for five days. Additionally, he was not permitted to take a shower for seven days.

> After 14 days, Kim was moved from the hole back to his unit. He was never retested.

> (ECF No. 1, p. 9).

---

[4] Kim also remains in state custody, charged with numerous sex offenses.  Case No. C-16-313094-1.

Plaintiffs allege that defendant has failed to implement the CDC's guidance for detention facilities at NSDC. *Id*. at 7-15.

Plaintiffs invoke this court's subject matter jurisdiction "under 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2241 (habeas corpus)" (ECF No. 1, p. 4). Plaintiffs claim that the conditions at NSDC, with respect to the threat posed by COVID-19, violate their rights as federal criminal pretrial detainees under the Fifth Amendment to the United States Constitution. *Id*. at 17-18. Plaintiffs seek a declaration that the current conditions at NSDC are unconstitutional and ask the court to direct Defendant to implement detailed sanitation and testing protocols. *Id*. at 18-23. They also ask that "if Constitutional conditions of confinement cannot be established" they be released pending trial. *Id*. at 21.

Federal law provides for two primary means for prisoners to seek relief on complaints related to their imprisonment, petitions for writ of habeas corpus and civil rights complaints. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Id*. (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Claims involving the circumstances of the plaintiff's confinement may be presented in civil rights actions. *Id*. Under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), a plaintiff may, in a civil rights action, sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. *See Bivens*, 403 U.S. at 389. And—as is the case, in part, here—a plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331, and the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional violations.

"The Supreme Court has 'long held that federal courts may in some circumstances grant injunctive relief against' federal officials violating federal law."

*Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015)); *Armstrong*, 575 U.S. at 327 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."); *Bacon v. Core Civic*, No. 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D.Nev. June 10, 2020).

This action, as pled by Plaintiffs, is a hybrid habeas and civil rights action; Plaintiffs' complaint includes both claims for habeas corpus relief, *i.e.* release from NSDC, and claims for civil rights relief, *i.e.* injunctive and/or declaratory relief (*see* ECF No. 1).

The Court concludes, however, in light of the particular factual allegations on which Plaintiffs' claims rely—allegations regarding failure to test all inmates or even all symptomatic inmates for COVID-19; inadequate cleaning; failure to provide detainees with adequate cleaning supplies, personal protective equipment and other items necessary to protect them from COVID-19; and insufficient medical care—that this action is a conditions-of-confinement case. Plaintiffs seek relief on account of the conditions of their confinement.  They do not claim any illegality regarding the reasons for their detention or its duration. As has been noted in this district, while it is true that if Plaintiffs were not detained at NSDC, they would not be subject to the alleged constitutional violations, that can be said in any conditions-of-confinement case.  If that were determinative of whether an action is properly a habeas action or a civil rights action, it would render habeas jurisdiction available in every conditions-of-confinement case. *See Cordova Carballo et al. v. Barr, et al*, Case No. 2:20-cv-01315-APG-BNW, ECF No. 46.

Plaintiffs stress that the Supreme Court has not explicitly foreclosed habeas corpus jurisdiction over all conditions-of-confinement claims. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017) (leaving open the question whether immigration detainees challenging "large-scale policy decisions concerning the conditions of confinement imposed ... might be able to challenge their confinement conditions via a petition for a writ of habeas corpus"); *Boumediene v. Bush*, 553 U.S. 723, 792 (2008) (declining to determine "the reach of the writ with respect to claims of unlawful conditions of treatment or confinement"); *Bell v. Wolfish*, 441 U.S. 520, 526, n. 6 (1979) (leaving for "another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement"); *Preiser*, 411 U.S. at 499 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal.").

In the Ninth Circuit, the Court of Appeals has left open the question of habeas jurisdiction over conditions-of-confinement claims by federal prisoners.  In *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016), a habeas action, a state prisoner challenged a prison disciplinary action on constitutional grounds, claiming the improper disciplinary action could affect his eligibility for parole.  The Court of Appeals held that because the petitioner's claim did not fall within the "core of habeas corpus," that is, it did not necessarily implicate the "fact or duration" of his conviction or sentence, it must be brought, if at all, in a civil rights action under 42 U.S.C. § 1983. *Nettles*, 830 F.3d at 925 (quoting *Preiser*, 411 U.S. at 487); *see also Nettles*, 830 F.3d at 931, 934.  The Court of Appeals noted that the Supreme Court has suggested that civil rights actions under 42 U.S.C. § 1983 are the exclusive vehicle for state prisoners' claims that fall outside the core of habeas. *See id*. at 929–31 (citing *Muhammad*, *Wilkinson*, and *Skinner v. Switzer*, 562 U.S. 521 (2011)). The Court stated:

> The [Supreme Court] has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action. *See*, *e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005)

1
2
3
4
5
6

(characterizing the Court's precedents as holding "that a state prisoner's §
1983 action is barred (absent prior invalidation)—no matter the relief sought
(damages or equitable relief), no matter the target of the prisoner's suit
(state conduct leading to conviction or internal prison proceedings)—if
success in that action would necessarily demonstrate the invalidity of
confinement or its duration"). Based on our review of the development of
the Court's case law in this area, we now adopt the correlative rule that a §
1983 action is the exclusive vehicle for claims brought by state prisoners
that are not within the core of habeas corpus.

7
8
9
10
11
12
13
14
15
16

*Nettles*, 830 F.3d at 927.  However, the Court of Appeals declined to address the

question of whether a civil rights action is the exclusive vehicle for a claim by a federal

prisoner not at the core of habeas. *See id.* at 931 ("Because the case before us involves

a state prisoner's action under 28 U.S.C. § 2254, we need not address how the

standard suggested in *Skinner* and adopted here applies to relief sought by prisoners in

federal custody."); *see also Workman v. Mitchell*, 502 F.2d 1201, 1208 n.9 (9th Cir.

1974)) (stating, in dicta, that it appeared "fairly well established that … federal habeas

corpus actions are now available to deal with questions concerning both the duration

and the conditions of confinement").

17
18
19
20
21
22
23
24
25
26
27

Federal district courts that have addressed the question, in the Ninth Circuit and

other circuits, have reached different conclusions regarding subject matter jurisdiction

under 28 U.S.C. § 2241 over federal prisoners' conditions-of-confinement claims in the

context of the COVID-19 pandemic.  For example, district courts in this circuit held that

jurisdiction under § 2241 was proper in such cases as *Zhang v. Barr*, No. ED CV 20-

00331-AB (RAOx), 2020 WL 1502607, at *3 (C.D.Cal. March 27, 2020); *Ortuno v.

Jennings*, No. 20-cv-02064-MMC, 2020 WL 1701724, at *2 (N.D.Cal. April 8, 2020);

*Bent v. Barr*, 445 F.Supp.3d 408, 413–14 (N.D. Cal. April 9, 2020); *Habibi v. Barr*, 445

F.Supp.3d 990, 995 n.2 (S.D. Cal. April 14, 2020); and *Perez v. Wolf*, 445 F.Supp.3d

275, 293 (N.D. Cal. April 14, 2020). *See also*, *e.g.*, *Thakker v. Doll*, 451 F.Supp.3d 358,

(M.D.Pa. March 31, 2020); *Vasquez-Berrera v. Wolf*, 4:20-CV-1241, 2020 WL 1904497,

28

at *3–5 (S.D. Tex. Apr. 17, 2020); *Ruderman v. Kolitwenzew*, No. 20-cv-2082, 2020 WL 2449758, at *7–8 (C.D. Ill. May 12, 2020).

District courts in this circuit have concluded that there was no habeas jurisdiction in several cases, including *Alvarez v. Larose*, 445 F.Supp.3d 861, 865–68 (S.D. Cal. May 9, 2020) (plaintiffs' "claims would not exist *but for* their current conditions of confinement . . . ."); *Wilson v. Ponce*, No. CV 20-4451-MWF (MRWx), 2020 WL 3053375, at *9–10 (C.D. Cal. June 8, 2020); and *Hunter v. Martinez*, No. 2:20-cv-05121-JAK (SHK), 2020 WL 3258398, at *3–5 (C.D.Cal. June 12, 2020); *see also*, *e.g.*, *Wragg v. Ortiz*, No. 20-5496 (RMB), 2020 WL 2745247, at *12–19 (D.N.J. May 27, 2020); *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4-7 (D.Co. May 27, 2020); *Mescall v. Hemingway*, No. 2:20-11110, 2020 WL 4584028, at *3 (E.D. Mich. Aug. 10, 2020).

Considering the precedent governing the general scope of habeas corpus jurisdiction, the court agrees with defendant that this does not appear to be a habeas case. If Plaintiffs succeed in showing that the conditions under which they are held violate the Fifth Amendment by putting them in excessive danger from COVID-19, or because they have received inadequate medical care in relation to COVID-19, that will not necessarily mean they must be released from detention. Plaintiffs' complaint mainly seeks that the court direct defendant to implement many specific safety measures, including social distancing; adequate sanitation and disinfection; PPE use that is consistent with CDC guidelines; heightened testing; and improved, non-punitive conditions for quarantine (ECF No. 1, pp. 18-22).  After listing 17 separate specific safety measures Plaintiffs ask the court to require of Defendant, Plaintiffs also ask that they be released "if constitutional conditions of confinement cannot be established." *Id.* at 21.  Thus, the Complaint does mention release, but it does not allege that the only effective remedy would be release. Plaintiffs certainly do not set forth factual allegations explaining why the conditions at NSDC could not be altered to sufficiently protect them

from COVID-19 and provide them with adequate medical care.  Even if plaintiffs did

argue that conditions could not be altered sufficiently, such a claim would conflict with

their requests for detailed injunctive relief regarding the conditions of their confinement.

This court concludes that it does not have jurisdiction over Plaintiffs' habeas claims

under 28 U.S.C. § 2241 and that Plaintiffs have not stated viable claims for which

habeas corpus relief may be granted.

The court in *Mescall v. Hemingway*, No. 2:20-11110, 2020 WL 4584028 (E.D.

Mich. Aug. 10, 2020), made this point in dismissing a similar habeas action in the

Eastern District of Michigan:

> Petitioner's claims are non-cognizable in habeas; Petitioner does not
> allege that no set of conditions of confinement would remedy the risk
> caused by Covid-19. Petitioner alleges that insufficient testing of the
> inmates and staff is being conducted; Petitioner alleges that some prison
> staff members are not following protocols for wearing face masks; Petitioner
> alleges that there is insufficient social distancing; Petitioner claims that there
> is insufficient sanitary equipment being provided to the inmates. Petitioner
> argues that the risk of Covid-19 transmission at FCI-Milan could be
> alleviated if facility wide testing for Covid-19 was ordered, if everyone was
> ordered to wear a face mask and to socially distance, and if adequate
> sanitary equipment was provided to all inmates. Petitioner does not allege
> that "there are no conditions of confinement sufficient to prevent irreparable
> constitutional injury" at FCI-Milan. Only "where a petitioner claims that no
> set of conditions would be constitutionally sufficient the claim should be
> construed as challenging the fact or extent, rather than the conditions, of
> the confinement." [*Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020)
> (citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011))]. Petitioner's
> claims are non-cognizable in a habeas petition, because he challenges the
> conditions of confinement, rather than the fact or extent of his confinement.

*Mescall v. Hemingway*, 2020 WL 4584028, at *3 (E.D. Mich. Aug. 10, 2020). As in

*Mescall*, in this case there is no colorable claim, supported by factual allegations, that

release from custody would be the only effective remedy.  No habeas jurisdiction lies

because Plaintiffs do not allege that the fact or duration of the custody itself is

unconstitutional.

11

Nevertheless, Plaintiffs' claims for injunctive and declaratory relief survive.  In *Roman v. Wolf*, a case where detainees made habeas and injunctive and declaratory relief claims about the unconstitutional risk of contracting COVID-19, the Ninth Circuit acknowledged that district courts have the authority to hear claims for injunctive and declaratory relief independently of the habeas claim. *See* No. 20-55436 (9th Cir. 2020) (declining to address the habeas claim because "the action for declaratory and injunctive relief independently provided the district court jurisdiction to hear the Plaintiff's challenges and authority to grant the types of relief that Plaintiff sought").  Here, the Plaintiffs are also detainees challenging the constitutionality of the conditions of their confinement in light of COVID-19.  As such, the Court will proceed with Plaintiffs' surviving claims for injunctive and declaratory relief.[5]

Accordingly, the motion to dismiss is granted in part, and the Plaintiffs' habeas corpus claims are dismissed.[6]

The motion to dismiss is denied in part without prejudice to the extent it seeks dismissal of Plaintiffs' civil rights claims, that is, Plaintiffs' claims invoking jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §§ 2201–02, and the court's inherent equitable

---

[5] Defendant also argues for dismissal on the grounds that Plaintiffs do not have standing to assert claims on behalf of the entire population of NSDC detainees, that they did not exhaust their administrative remedies, and that other relief is available under the Bail Reform Act. (ECF No. 12, p. 2:9–15, 17:13). However, Plaintiffs have standing to raise their own claims against unconstitutional treatment, regardless of whether other detainees are subject to the same treatment, and the Court need not address any class certification at this stage. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (allowing six detainees to challenge the conditions at a facility holding hundreds); (ECF No. 15, p. 18:8–14).  Additionally, exhaustion of administrative remedies is not required if it would be futile, as it is here, since Plaintiffs, as well as many other detainees, have challenged NSDC's COVID-19 policies to no avail; there is no indication that NSDC's response to additional grievances would be any different based on their policy.  *See Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (holding that when a denial of a grievance request is based on official Bureau of Prisons policy, further grievance requests would be futile); (ECF No. 1, p. 13:13–14); (ECF No. 15, p. 16:12–17:15); (ECF No. 12, p. 4:3–4, 32:22–23); (ECF No. 12-1, Exh. A).  Finally, the Court agrees with Plaintiffs' argument that the Bail Reform Act does not provide a mechanism to challenge the conditions of their confinement, as Plaintiffs do here. (*See* ECF No. 12, p. 15:10–19).

[6] The court also has considered the practical difficulty, and potential unfairness, of proceeding in this case on both habeas and civil rights claims. It appears that, if this case were to proceed in this hybrid form, a recurring question would be whether habeas practice or general civil practice should control; the answer to that question would be unpredictable for the parties, and would inevitably have different ramifications for the plaintiffs and defendant depending on the procedural step under consideration. It appears that proceeding with this case to resolution as a hybrid habeas and civil rights action, as it is pled, would be impracticable and potentially unfair to one party or the other. *See Cordova Carballo et al. v. Barr, et al.*, 2:20-cv-1315-APG-BNW (ECF No. 46, p. 13 n.6) (D. Nev. September 30, 2020).

powers, seeking injunctive and declaratory relief against the Defendant in his official capacity.

The Court need not address whether the Federal Public Defender can represent Plaintiffs at this stage in the proceedings, because Plaintiffs' Motion for Appointment of Counsel, (ECF No. 17), is not yet fully briefed.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (ECF No. 12) is **GRANTED in part and DENIED in part**.  Plaintiffs' habeas corpus claims are DISMISSED.  In all other respects, the motion to dismiss is denied without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to file surreply (ECF No. 22) is **GRANTED**.  The Clerk **SHALL DETACH** and **FILE** the surreply at ECF No. 22-1.

DATED: 16 October 2020.

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

13