Jacob B. Lee
Nevada Bar No. 012428
Ashlee B. Hesman
Nevada Bar No. 012740
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
JLee@strucklove.com
AHesman@strucklove.com

Gina G. Winspear
Nevada Bar No. 005552
DENNETT WINSPEAR, LLP
3301 North Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Telephone: (702) 839-1100
Fax: (702) 839-1113
GWinspear@dennettwinspear.com

*Attorneys for Defendant Brian Koehn*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JESS ELIJIO CARRANZA, JIMMY CARTER KIM, | Case No. 2:20-cv-01586-GMN-DJA |
| Plaintiffs/Petitioners, | **DEFENDANT KOEHN'S OBJECTION TO ORDER ALLOWING EXPEDITED DISCOVERY (DOC. 32)** |
| v. | |
| WARDEN BRIAN KOEHN, | |
| Defendant/Respondent. | |

Pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and LR IB 3-1(a), Defendant,[1] Warden Brian Koehn ("Warden Koehn"),[2] through counsel, objects to the Magistrate

---

[1] The Court dismissed Plaintiffs' habeas claim on October 16, 2020. (Doc. 24.)

[2] As of October 20, 2020, Brian Koehn is no longer the Warden of Nevada Southern Detention Center ("NSDC"). (Doc. 33.) Blair Leibach is currently the Interim Warden of NSDC. (Id.) Because Warden Koehn was sued in his official capacity only, Interim Warden Leibach is automatically substituted in for him as a Defendant. *See* Fed. R. Civ. P. 25(d). Moreover, the Court should amend the caption to reflect Blair Leibach as the Defendant. *See id.* ("Later proceedings should be in the substituted party's name.") Because the caption has not yet been amended, however, this Motion refers to Warden Koehn to avoid confusion.

- 1 -

Judge's November 9, 2020 Order requiring him to respond to Plaintiffs' burdensome requests for production and allow an in-person site visit by Plaintiffs' expert on an expedited basis before the parties met and conferred pursuant to Rule 26(f), before either Warden Koehn or the Magistrate Judge had seen the actual discovery requests, and without providing Warden Koehn an opportunity to fully and fairly brief the issue before being ordered to provide the discovery. The Magistrate Judge failed to analyze whether good cause existed for expedited discovery, instead merely accepting Plaintiffs' purported good cause wholesale. The Court should vacate the Order requiring Warden Koehn to engage in this burdensome and expedited discovery.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are federal pretrial detainees at NSDC, in the legal custody of the United States Marshals Service ("USMS"). (Doc. 1.) On August 26, 2020, they filed their Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief ("Complaint"), seeking a writ of habeas corpus and/or a declaration that conditions at NSDC are unconstitutional and an injunction requiring Warden Koehn to implement various COVID-19-related measures at NSDC. (Id.) On September 3, 2020, the Court ordered Warden Koehn to answer the Petition within 14 days. (Doc. 5.) Warden Koehn filed his Motion to Dismiss and Response to Petition for Writ of Habeas Corpus on September 17, 2020, including a 16-page Declaration with over 150 pages of attachments regarding facility policies and practices pertaining to COVID-19 and demonstrating then-current facility conditions. (Doc. 12.) The Court granted the Motion to Dismiss on October 16, 2020 and dismissed Plaintiffs' habeas claims, finding that habeas jurisdiction did not lie because Plaintiffs were not challenging the fact or duration of their custody, but allowing their claims for injunctive and declaratory relief to survive. (Doc. 24.)[3]

---

[3] The Court denied the Motion to Dismiss to the extent it sought dismissal of the claims for declaratory and injunctive relief, but Warden Koehn did not challenge those claims in the Motion to Dismiss, which was filed in response to the Order that required Warden Koehn to respond to the Petition, but did not require a response to the Complaint at that time. (Doc. 5.) Warden Koehn filed his Answer to the Complaint on November 9, 2020. (Doc. 33.)

On October 30, 2020, Plaintiffs filed a two-paragraph Motion for Scheduling Order, setting out an abbreviated procedural history and asking the Court to issue a Scheduling Order pursuant to Local Rule 16-1(b). (Doc. 30.) On November 3, 2020, the Magistrate Judge set a discovery hearing for November 9, 2020. (Doc. 31.) The Magistrate Judge did not order the parties to meet and confer before the hearing, and Plaintiffs made no attempt to do so.

Rather, Plaintiffs requested at the hearing—for the first time—an expedited discovery schedule that would require Warden Koehn to respond to 20 requests for production within two weeks and allow an in-person site visit by Plaintiffs' expert within 30 days. (Ex. 1, Transcript of November 9, 2020 Discovery Hearing, 4:8–5:21, 7:2–18.) Counsel for Plaintiffs vaguely described the requests for production as seeking updated versions of some of the documents attached to Warden Koehn's Declaration, and gave a few incomplete examples of the types of documents being sought. (Id. at 7:2–18, 8:1–9.) Counsel did not provide a copy of the requests to either the Magistrate Judge or counsel for Warden Koehn prior to, or even during, the hearing. As to the site visit, counsel for Plaintiffs requested that the expert be given at least one full business day, but perhaps more, to walk through the facility and conduct roving depositions of staff and detainees. (Id. at 9:5–21.)

Counsel for Warden Koehn objected to the lack of any sort of meet and confer process before asking the Magistrate Judge to order the expedited discovery and the lack of disclosure to either the Magistrate Judge or Warden Koehn of the requests, requiring the Magistrate Judge to engage in the hypothetical exercise of deciding whether two weeks is an appropriate response time without anyone having actually seen the requests. (Id. at 10:16–24, 25:12–19, 26:6–9.) In the event the Magistrate Judge was inclined to issue a discovery order, counsel for Warden Koehn asked that discovery proceed in the normal course, as neither Plaintiffs' particular conditions nor facility conditions generally warranted the burdensome and expedited discovery Plaintiffs were seeking. (Id. at 11:18–12:18.) Counsel for Warden Koehn did not object to the conduct of discovery generally, but only to the rapid timeframe in which Plaintiffs were asking for it to be conducted. (Id. at 26:13–18.)

The Magistrate Judge recognized that "any meet and confer requirement in this instance was on [him] to order, and in hindsight perhaps [he] should have." (Id. at 22:6–8, 30:6–8.)[4] The Magistrate Judge further acknowledged that Warden Koehn's concern about not having seen the requests was "a valid point." (Id. at 26:10–11.) Nevertheless, without himself having seen the requests either, the Magistrate Judge incorrectly characterized them as "records that are – for the most part are going to be kept, some of which have already been provided in other parts of the litigation. So we're just talking updating them." (Id. at 23:21–24:2.) The Magistrate Judge then proceeded to order Plaintiffs to serve their requests for production that afternoon and gave Warden Koehn 14 days—until November 23, 2020—to either respond or object to them. (Id. at 31:7–22.) The Magistrate Judge further ordered Warden Koehn to allow a site visit on December 9, 2020—i.e., within 30 days—and ordered the parties to meet and confer about the logistics of the site visit. (Id. at 31:23–32:5.) The Magistrate Judge left for a later date "whether or not there will be further depositions, interrogatories, or any other further discovery based on document production, the site inspection, and whether or not these occur." (Id. at 32:6–13.)

## II.    LEGAL ARGUMENT

A district judge may overturn a magistrate judge's order if it "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a). An order is "clearly erroneous" if the district judge has "a definite and firm conviction that a mistake has been committed." *Seely v. Baca*, No. 3:15-cv-00118-MMD-VPC, 2017 WL 3484656, at *1 (D. Nev. Aug. 11, 2017) (quoting *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quoting *Jadwin v. Cty. of Kern*< 767 F. Supp. 2d 1069, 1110–11 (E.D. Cal. 2011)). Essentially, the district judge must determine whether the magistrate judge abused his discretion. *See Peters v. Cox*, No. 3:15-cv-00472-RCJ-VPC, 2018 WL 2323523, at *1 (D. Nev. May 22, 2018).

---

[4] The Magistrate Judge did not issue a written order, but stated that "the transcript will serve as the order." (Ex. 1 at 39:13–15.)

Rule 26(d)(1) prohibits a party from seeking discovery "from any source before the parties have conferred as required by Rule 26(f) … or when authorized … by court order." Expedited discovery—i.e., discovery prior to the Rule 26(f) meet and confer and/or discovery on a shortened timeframe—in any case is an "extraordinary remedy." *Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG, 2011 WL 7402999, at *3 (N.D. Cal. Sept. 13, 2011). Such a request therefore requires a showing of good cause—i.e., that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). To determine whether good cause exists for expedited discovery, courts within the Ninth Circuit consider the following factors: "(1) whether a preliminary injunction is pending; (2) the purpose of the discovery request; (3) the breadth and purpose of the discovery request; and (4) the burden on the non-moving parties to comply with the request." *Mach 1 Air Servs., Inc. v. Mainfreight, Inc.*, No. CV-14-01444-PHX-SPL, 2015 WL 11181334, at *1 (D. Ariz. Mar. 5, 2015) (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)); *see also C.G.B. v. Wolf*, No. 1:20-cv-01072-CRC (D.D.C. Aug. 12, 2020), ECF No. 58 (Ex. 2) (applying similar factors in a COVID-19 case involving NSDC and CoreCivic's La Palma Correctional Center ("LPCC") and denying the plaintiffs' motion for expedited discovery); *Nellson v. Barnhart*, 2020 WL 3000961, at *4 (D. Colo. June 4, 2020) (finding good cause did not exist to allow expedited discovery in a COVID-19 case involving a BOP facility where the requested discovery far exceeded the relief sought in the plaintiffs' motion for preliminary injunction).

Here, the Magistrate Judge committed clear error and acted contrary to law when he failed to analyze whether good cause existed for the expedited discovery Plaintiffs seek. In fact, he was prohibited from doing so by the fact that Plaintiffs made their request orally at a hearing, without any advance notice to either the Magistrate Judge or counsel for Warden Koehn as to the scope of the discovery they were seeking or the timeframe in which they sought to accomplish it, and without any opportunity for Warden Koehn to brief the issue. It is no wonder, then, that the Magistrate Judge failed to consider either the general good cause standard or the factors listed above—he, like Warden Koehn, was blindsided by Plaintiffs' request. Without that analysis, his

Order requiring Warden Koehn to provide expedited responses and allow a site visit on an expedited basis was clearly erroneous and contrary to law.

### A. There Is No Motion for Preliminary Injunction Pending.

The Magistrate Judge clearly erred and acted contrary to law when he ordered Warden Koehn to provide burdensome discovery on an expedited basis despite the fact that a motion for preliminary injunction is not currently pending. Although courts find good cause "when confronted with a pending motion for preliminary injunction, they usually do not when presented with a party's mere inclination to file such a motion." *Mach 1 Air*, 2015 WL 11181334 at *1; *see also C.G.B.*, No. 1:20-cv-01072-CRC at 3–4; *Human Rights Watch v. Drug Enf't Admin*, No. CV 15-2573 PSG (JPRx), 2015 WL 13648069, at *2 (C.D. Cal. July 10, 2015); *Exari Sys. Inc. v. Amazon Corp. LLC*, No. C15-356 MJP, 2015 WL 12025325, at *2 (W.D. Wash. May 4, 2015); *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. C12–2082JLR, 2013 WL 566949, at *11 (W.D. Wash. Feb. 13, 2013); *Facebook, Inc. v. Various, Inc.*, No. C–11–01805–SBA (DMR), 2011 WL 2437433, at *3 (N.D. Cal. June 17, 2011).

*C.G.B.* is instructive. There, the plaintiffs—10 transgender immigration detainees at various facilities around the country—moved for "immediate, expedited discovery in order to support their anticipated motion for a preliminary injunction" in their lawsuit seeking injunctive relief due to the COVID-19 pandemic. No. 1:20-cv-01072-CRC at 1. At the time they did so, only three remained in custody—one at LPCC and two at NSDC. *Id*. at 2. In analyzing factors similar to the *Mach 1 Air* factors, the district court placed great weight on the fact that the plaintiffs had not yet filed a motion for preliminary injunction, but instead sought the discovery in order to prepare such a motion. *Id*. at 3–4. Because the plaintiffs had not already filed a motion, the court noted it was "exceedingly difficult for the Court to assess the breadth and appropriateness of Plaintiffs' requested discovery." *Id*. at 4. The Court further stated:

> Had Plaintiffs filed for a preliminary injunction, the Court would be able to assess their discovery requests in light of that motion and the specific factual disputes involved. But without a motion before it, the Court is left to compare the information Plaintiffs seek against the claims in their complaint and their prior motion for a TRO. Against those claims, the requests appear quite broad.

*Id*. at 4–5 (internal citations omitted). Finding that the other factors also weighed against expedited discovery, the district court denied the plaintiffs' motion. *Id*. at 5–6.

The value of such an assessment cannot be understated. In *Nellson*, the plaintiff filed both a motion for preliminary injunction and a motion for expedited discovery in his putative class action alleging failure by the Federal Bureau of Prisons to adequately respond to COVID-19 at United States Penitentiary Florence. 2020 WL 3000961 at *1. Comparing the requests with the issues raised in the injunction motion, the district court found that the documents and information sought by the requests far exceeded the issues raised in the injunction motion, making them "irrelevant to the preliminary matter before the Court." *Id*. at *4. As a result, the court found that "there is not good cause for expedited discovery" and denied the plaintiff's motion. *Id*. at 4–5.

The same outcome should result here. Plaintiffs have not filed a motion for preliminary injunction, but have instead stated only that they intend to do so. There was therefore no way for the Magistrate Judge to "assess their discovery requests in light of that motion and the specific factual disputes involved," and indeed, no such assessment occurred. As set forth more fully below, the Magistrate Judge's failure to determine the breadth and burden of the expedited discovery requests—which was impossible without a previously filed motion for preliminary injunction to compare the requests to—was clearly erroneous and contrary to law.

**B.    The Purported Purpose of Expedited Discovery Is Improper.**

The Magistrate Judge failed to consider whether Plaintiffs' stated purpose—to gather information in support of a forthcoming motion for preliminary injunction—is proper. Although gathering evidence in support of a motion is not a per se improper purpose, it becomes improper when such discovery is demanded on a expedited basis before the parties have met and conferred pursuant to Rule 26(f), before either the responding party or the Court has seen the actual discovery requests, and without providing the responding party an opportunity to fully and fairly brief the issue before it is ordered to provide the discovery.

First, as noted above, numerous courts—including in recent cases pertaining to COVID-19—have held that expedited discovery is not proper where the requesting party has not yet filed a motion for preliminary injunction, but has expressed only an intent to do so. *See, e.g., C.G.B.*,

No. 1:20-cv-01072-CRC at 4 ("Plaintiffs protest that they intend to seek a preliminary injunction soon, but they cite no authority for their argument that an anticipated preliminary injunction is enough to place this factor on their side of the scale."); *Mach 1 Air*, 2015 WL 11181334 at *1 ("[W]hile Plaintiffs characterize the purpose of their expedited discovery request is to support their pursuit of injunctive relief, it is a disguised attempt to obtain early discovery to uncover the factual basis of their claims. Plaintiffs are not entitled to this form of discovery."); *Fluke Electronics*, 2013 WL 566949 at *12 (expedited discovery to gather evidence in support of anticipated motion for preliminary injunction "is not a legitimate basis for expedited discovery"); *Exari*, 2015 WL 12025325 at *2 (plaintiffs' asserted purpose—to gather evidence to file a motion for preliminary injunction—"does not weigh in Plaintiffs' favor").

Instead of analyzing whether Plaintiffs' request for expedited discovery was proper in light of their failure to first file a motion for preliminary injunction, which itself constitutes error, the Magistrate Judge seemed to premise the order on "the urgency to this given the nature of the disease and some of the things that's happened out there." (Ex. 1 at 24:19–21.) These statements are unsupported—there have been no findings in this case that NSDC has failed to take appropriate precautions with respect to COVID-19, and Plaintiff Kim has already had, and fully recovered from, COVID-19 without suffering any form of severe illness. (Doc. 12-4, ¶¶ 40–44; Doc. 13-4, ¶¶ 40–44.) Moreover, other courts have denied expedited discovery even in the face of COVID-19 and other health risks. *See C.G.B.*, No. 1:20-cv-01072-CRC at 6; *Nellson*, 2020 WL 3000961 at *4–5.[5]

---

[5] Notably, if health risks are alone sufficient to warrant expedited discovery, an "extraordinary remedy" in any case, *see Boy Racer, Inc.*, 2011 WL 7402999 at *3, then expedited discovery would become the norm in every case involving jail or prison conditions claim. Warden Koehn also notes that Plaintiffs have grossly overstated the current conditions at NSDC, which has implemented extensive procedures and protocols to mitigate the risk from COVID-19. Although NSDC has not been COVID-free, the total number of positives is not dispositive of Plaintiffs' constitutional claims. *See Hope v. Warden York Cty. Prison*, No. 20-1784, 2020 WL 5001785, at *12 (3d Cir. Aug. 25, 2020) (holding that the "failure to eliminate all risk" of COVID-19 "is not the constitutional standard"); *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) ("[T]he district court erred in relying on the increased rate of infection."); *id.* at 1288 (holding that the fact that "the defendants didn't succeed in preventing the virus' spread" is not dispositive); *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (vacating preliminary injunction, and finding no Fourteenth or Eighth Amendment violation despite the spread of COVID-19 at the facility where the Bureau of Prisons took preventative measures).

Second, Plaintiffs seek expedited discovery not to *preserve* the status quo, but to gather evidence to support a forthcoming motion for preliminary injunction specifically geared (presumably, as the motion has not yet been filed) toward *altering* the status quo. *See Am. LegalNet*, *Inc*, 673 F. Supp. 2d at 1067 (party seeking expedited discovery in connection with a motion for preliminary injunction must limit "its discovery requests to information 'to preserve the status quo'"). Because Plaintiffs have not yet filed a motion for preliminary injunction, Warden Koehn and the Court are unable to evaluate whether Plaintiffs' expedited discovery requests seek information necessary to "preserve the status quo." *Id.*; *Human Rights Watch*, 2015 WL 13648069 at *3. Assuming, however, that Plaintiffs' motion will seek a mandatory rather than prohibitory injunction, their expedited discovery requests seek to do much more than "preserve the status quo." *Am. LegalNet*, 673 F. Supp. 2d at 1068 (internal quotations omitted). To the contrary, Plaintiffs "want to gather all the evidence they would need to radically transform the status quo, on an expedited basis. But, that is not the purpose of a preliminary injunction, nor of the limited discovery that the courts traditionally permit a plaintiff to have to secure it." *Harbor Freight Tools USA Inc. v. Lumber Liquidators Holdings Inc.*, 2013 WL 12142995, at *4 (C.D. Cal. Jan. 10, 2013) (quoting *Disability Rights Council of Greater Wash. V. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006)). The Magistrate Judge did not consider this, which alone renders his Order for expedited discovery improper.

Third, the manner in which the Magistrate Judge issued the Order was improper. Plaintiffs' Motion for Scheduling Order gave no indication that they intended to seek the expansive expedited discovery Warden Koehn has been ordered to respond to. Rather, the relevant portion of the Motion read in its entirety: "Because the habeas portion of this case has been dismissed and it is now proceeding solely as a civil-rights case premised on this Court's inherent authority under 28 U.S.C. 1331 (which is the same authority from which *Bivens* derives), [P]laintiffs respectfully request that this Court issue a scheduling order under Local Rule 16-1(b) so that this case may proceed." (Doc. 30.) Plaintiffs made no effort to meet and confer with Warden Koehn—either prior to filing the Motion, after filing the Motion, or after the Magistrate

Judge set the discovery hearing—to discuss their plans for discovery.[6] There was therefore no reason for Warden Koehn to suspect that briefing would be required as to the propriety of expedited discovery, and the Magistrate Judge ordered none. And at the time the Magistrate Judge entered the Order, neither he nor counsel for Warden Koehn had seen the actual requests for production, such that he cannot have considered either the breadth or the burden of the requests—a clear error.

### C. The Breadth and Burden of the Requested Discovery Weigh Against Expedited Discovery.

The Magistrate Judge made no finding that Plaintiffs' expedited discovery requests are "narrowly tailored to obtain information relevant to a preliminary injunction determination." *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1069 (internal quotations omitted). Had he been provided with a copy of the requests prior to being asked to enter an order requiring Warden Koehn to respond to them in two weeks, he would have seen that the requests are in fact overbroad and unduly burdensome, and go not only to the merits of Plaintiffs' claims, but in fact far beyond them. *Id.*

Although numbered 1–22 (not 20, as originally stated), most of Plaintiffs' requests are compound, such that the true number of requests is more likely double that, if not more. And the

---

[6] In response to counsel for Warden Koehn's argument at the discovery hearing about the lack of a meet and confer, counsel for Plaintiffs responded that it was not required under Local Rule 16-1(b). (Ex. 1 at 21:17–24.) But Local Rule 16-1(b) provides, in relevant part, that a discovery plan is not required only "[i]n actions by or on behalf of inmates under 42 U.S.C. § 1983 or the principles of *Bivens*." Counsel's oblique reference to *Bivens* in the Motion for Scheduling Order notwithstanding, Plaintiffs are not seeking relief under either § 1983 or *Bivens*. Nor can they, as Warden Koehn is not acting under color of state law with respect to Plaintiffs, who are federal detainees, *see West v. Atkins*, 487 U.S. 42, 48 (1988) (§ 1983 requires violation of a right secured by the U.S. Constitution and federal law by one acting under color of state law), and *Sarro v. Cornell Corr., Inc.*, 248 F. Supp. 2d 52, 64 (D.R.I. 2003) (the authority to maintain custody of federal prisoners is created by federal law, and correctional officers at a privately owned prison under contract with USMS are "federal actors" performing a federal function), and *Bivens* claims do not lie against a private corporation, *see Corr. Services Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (a *Bivens* claim cannot lie against a private prison operator), or its employees, *see Minneci v. Pollard*, 132 S. Ct. 617, 619 (2012) (a *Bivens* claim cannot lie against the employees of a private corporation). Indeed, Plaintiffs' Complaint alleges jurisdiction only under 28 U.S.C. § 1331, with no mention of either § 1983 or *Bivens*. Thus, a Rule 26(f) conference should have been required prior to the entry of a discovery order, during which the parties would have discussed "the nature and basis of their claims and defenses," "the disclosures required by Rule 26(a)(1)," and "a proposed discovery plan."

requests go well beyond facts necessary to resolve the claims of the two named Plaintiffs, let alone facts necessary to determine whether they are entitled to a preliminary injunction. Specifically, Plaintiffs seek the following:

1. NSDC's COVID-19 response plan and any plans, protocols, or documents that bear on NSDC's compliance with CDC guidance.

2. Documents regarding protocols for screening and testing staff and detainees for COVID-19.

3. Documents regarding the number of detainees who meet CDC criteria for being high-risk, how they are identified, and any special protocols in place for this population.

4. Documents regarding protocols for death reviews for COVID-19 cases and any such completed reviews.

5. Documents regarding the number of detainees who have been tested, the number of positive and negative tests and on what dates, and the total number of current confirmed-positive cases and "cleared" or "recovered" cases.

6. Documents regarding the number of staff who have been tested, the number of confirmed positive cases, and the total number of "cleared" or "recovered" staff cases.

7. Documents regarding the current number of detainees in each unit and the maximum capacity of each of those units.

8. Documents regarding the total number of working sinks, toilets, showers, telephones, and computers in each unit.

9. All grievances, kites, or internal complaints that have been filed within the facility relating to COVID-19 from March 17, 2020, to present and all responses thereto.

10. Documents regarding which correctional officers and any other NSDC staff worked in which units and when from August 26, 2020 to present.

11. Documents regarding waivers, legal releases, or consent forms that have been distributed to detainees relating to placement or lack of placement in protective custody or a high-risk unit.

12. Documents regarding how arrival groups are kept separate during the intake quarantine period and how the facility tracks whether any arrival groups mix. Also, any documentation showing how the facility tracks whether new arrival groups are separated from those housed in the AA or CA pods for disciplinary reasons or because they have already tested positive.

13. Documents regarding which units have been placed on quarantine/cohort status and when such periods began and ended from August 26, 2020, to present.

14. Documents regarding the number of masks distributed to detainees, when these masks were distributed, and the protocol for mask cleaning.

15. Provide the staffing contingency plan

16.      Provide the "emergency plans for a medical emergency and pandemic preparedness."

17.      Documents regarding the criteria for when a COVID-19 positive detainee is transported to a hospital for outside care. Identify how it is decided whether the detainee should be transported to the Desert View Hospital in Pahrump or to a Las Vegas Hospital and to which Las Vegas hospital.

18.      Documents regarding the total number of medical staff present at the facility per 24-hour period and the titles of each

19.      Completed COVID-19 daily check lists from August 26, 2020, to present.

20.      Documentation regarding how detainees are notified of their COVID-19 test result and by whom.

21.      Documentation regarding medical isolation procedures for when a detainee is awaiting test results and after testing positive.

22.      Documentation regarding any plans/protocols for medical treatment of COVID-19 positive detainees.

(Ex. 3.) "While Plaintiffs seek only existing records, it does not follow that the burden of compiling such information is low, as Plaintiffs insist. For example, gathering [detailed statistics regarding testing] clearly would require considerable time and effort. Similarly, collecting [copies of all versions of guidance documents from the facilities' government partner] would impose a significant burden on the [defendant]. The Court thus credits the [defendant's] assertion that it would be unduly burdened by these far-reaching requests." *C.G.B.*, No. 2:20-cv-00901-DJH-DMF at 5–6.

Neither Plaintiffs nor the Magistrate Judge explained *how* the requested discovery will help establish entitlement to a preliminary injunction, which requires clear proof that Plaintiffs are subjected to a substantial risk of serious harm at NSDC and that Warden Koehn's conduct has been objectively unreasonable in responding to the threat posed by COVID-19. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). Many of these requests, however, appear to be fishing for information to pursue *new* lawsuits, or to support other pending lawsuits, not a motion for preliminary injunction in this case.

At best, this is "a disguised attempt to obtain early discovery to uncover the factual basis of their claims," *Mach 1 Air*, 2015 WL 11181334 at *1, or a "merits inquir[y] targeting the crux of Plaintiffs' claims," *Hall v. Mims*, No. 1:11–cv–02047–LJO–BAM, 2012 WL 1498893, at **2–

3 (E.D. Cal. Apr. 27, 2012). Neither is an appropriate basis to compel expedited discovery. The Magistrate Judge also overlooked the fact that Warden Koehn has already provided significant information relating to NSDC's COVID-19 protocols with his Motion to Dismiss and Response to Petition for Writ of Habeas Corpus. (Doc. 12, 13.) Again, Plaintiffs have never explained why this information is inadequate, or why Warden Koehn must respond to these expansive requests for production and allow a disruptive site visit on an expedited basis to allow them to pursue a motion for preliminary injunction.

### III.    CONCLUSION

The Magistrate Judge's Order allowing Plaintiffs to conduct expansive expedited discovery is clearly erroneous and contrary to law, as the Magistrate Judge abused his discretion by granting Plaintiffs' oral request before the parties met and conferred pursuant to Rule 26(f), before either Warden Koehn or the Magistrate Judge had seen the actual discovery requests, and without providing Warden Koehn an opportunity to fully and fairly brief the issue before being ordered to provide the discovery. Warden Koehn therefore respectfully requests that the Court vacate the Magistrate Judge's Order and deny Plaintiffs' request.

1    DATED this 23rd day of November, 2020.

2                                                STRUCK LOVE BOJANOWSKI & ACEDO, PLC

3
                                                 By /s/ Jacob B. Lee
4                                                    Jacob B. Lee
                                                     Ashlee B. Hesman
5                                                    3100 West Ray Road, Suite 300
                                                     Chandler, Arizona 85226
6                                                    JLee@strucklove.com
                                                     AHesman@strucklove.com
7
                                                     Gina G. Winspear
8                                                    DENNETT WINSPEAR
                                                     3301 North Buffalo Dr., Suite 195
9                                                    Las Vegas, NV 89129
                                                     GWinspear@dennettwinspear.com
10

11                                               NICHOLAS A. TRUTANICH
                                                 UNITED STATES ATTORNEY
12
                                                 By /s/ Holly A. Vance (with permission)
13                                                   Holly A. Vance
                                                     Assistant United States Attorney
14                                                   United States Attorney's Office
                                                     400 S. Virginia Street, Suite 900
15                                                   Reno, NV 89501
                                                     Holly.A.Vance@usdoj.gov
16
                                                     *Attorneys for Defendant Brian Koehn*
17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on November 23, 2020, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of

4

Electronic Filing to the following CM/ECF registrants:

5

6

7

8

9

Erin M. Gettel
Federal Public Defender
411 E Bonneville Avenue, Suite 250
Las Vegas, NV 89101
Telephone: (702) 388-6577
erin_gettel@fd.org

*Attorney for Petitioners*

10

11

/s/ Jacob B. Lee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28